# FARMERS' LOAN AND TRUST COMPANY *v.* NEWMAN.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF MISSOURI.

No. 253.   Argued April 25, 26, 1888. — Decided May 14, 1888.

The receiver in a suit for the foreclosure of a railroad mortgage, being directed by the court to settle and adjust outstanding claims prior to the mortgage debt, and to purchase in outstanding adverse liens or titles, agreed with the holder of a debt, which constituted a paramount lien on a portion of the railroad, for the purchase of his lien and the payment of his debt out of any money coming into the receiver's hands from the part of the railroad covered by the lien, or from the sale of the receiver's certificates, or from the earnings of that portion of the road, or from the sale of it under the decree of the court; and this agreement was carried out on the part of the vendor. When it was made, a decree for a sale had already been made in the foreclosure suit; and afterwards the road was sold as an entirety, with nothing to show the price paid for the portion covered by the lien, and payment was made in mortgage bonds without any money passing. The vendor of the prior lien then intervened in the suit, asking the court to enforce his agreement with the receiver. Subsequently the court confirmed the sale, reserving to itself the power to make further orders respecting claims, rights, or interests in or liens on the property. At a subsequent term of court the

court found that there was justly due the intervenor the sum claimed, and ordered the sale set aside unless the claim should be paid within ninety days. *Held*, that the intervenor was entitled to the protection of the court, but that the proper remedy was not the annulling of the sale, and confirmation, and master's deed, if the court had the power to do it, but an order for a resale of the entire property in satisfaction of the claim of the intervenor.

THE case as stated by the court was as follows :

This is an appeal from a final order setting aside a sale, made under a decree of foreclosure, of certain mortgaged railroad property, as well as the confirmation thereof, and requiring the receiver, appointed in the foreclosure proceedings, to regain possession of the property, unless the purchaser, before the expiration of a named period, paid a claim of the present appellee, for $17,750, with interest thereon at the rate of six per cent per annum from November 30, 1880.

The origin of that claim, and the circumstances under which it was asserted in this suit, are as follows:

The Lexington, Lake and Gulf Railroad Company was a Missouri corporation, with power to construct and operate a road from Lexington to the southern boundary line of that State. Having constructed the road-bed from Lexington to Butler, in Bates County, and procured ties sufficient for its line as far south as Pleasant Hill, and having also done some dredging, and being indebted to contractors for such work and materials — its liability therefor being evidenced by two notes, one held by Munroe & Co. for $10,682.74, and the other by Lawrence Dean for $2000, each dated October 12, 1871, and bearing interest at ten per cent per annum from date — the company, January 16, 1872, conveyed its road, together with all its rights, privileges, and franchises, including its depot-grounds and other property, acquired and to be acquired, to Moses Chapman, in trust to secure the payment of said notes, and with authority in the trustee, upon default in paying the notes, principal and interest, on or before March 1, 1872, to sell the mortgaged property, at public auction, upon thirty days' notice of sale, for cash, and convey the same to the purchaser.

On the 7th of February, 1872, the company leased its road and property (with the right to mortgage the same) to the Burlington and Southwestern Railway Company — for and in behalf of its Linneus Branch — a corporation created under the laws of Missouri and Iowa, and whose road in Missouri was to extend from the Iowa line to Unionville, with a branch by way of Linneus to Lexington, thence to Kansas City and southwestern Missouri. The lease provided, among other things, that the property leased and said Linneus Branch should be represented by one common stock, and, to all intents and purposes, constitute one line of road, and one common property, to be known as the Linneus Branch of the Burlington and Southwestern Railway. The lessor company in the lease covenanted, among other things, that the leased premises were free from all liens, incumbrances, and debts, "except about the sum of $15,000 due contractors thereon."

On the 1st of April, 1872, the Burlington and Southwestern Railway Company placed a deed of trust upon its entire Linneus Branch and appurtenances, including the leased premises, extending from the main line of the mortgagor company at or near Unionville, by the way of Linneus and Lexington to Kansas City, and by the line of the leased premises from Lexington to Butler, to secure its bonds amounting to $1,600,000. Upon default in meeting the principal and interest of those bonds, the Farmers' Loan and Trust Company, trustee in the last-named deed, instituted in the court below a suit for foreclosure and sale. A final decree of foreclosure and sale was passed May 19, 1876, but, for some reason, it was not immediately executed.

On the 20th of February, 1877, Chapman, trustee in the deed of January 16, 1872, sold the mortgaged premises at public auction, after the required notice, to satisfy the debts secured by that deed, and Henry L. Newman, holding the note given to Munroe & Co., as trustee for the benefit of himself and one Waddell, became the purchaser. Chapman conveyed to Newman, as trustee, the deed being acknowledged August 22, 1877, and filed for record August 5, 1878.

On the 24th of December, 1879, Elijah Smith, receiver in

the foreclosure suit, and also a holder of a large amount of bonds secured by the $1,600,000 mortgage, filed his petition in the foreclosure suit, alleging that Newman and others claimed to own that part of the mortgaged premises consisting of the graded road-bed between Lexington and Butler, and asking that they be enjoined from attempting to interfere with said premises or any part thereof. An injunction was granted, and negotiations then pending between Newman and others for the sale of what he had purchased were thereby broken off.

On the 10th of January, 1880, the receiver, Smith, represented, by petition filed in the foreclosure suit, that a portion of the property in his custody is a line of railroad, partly constructed, "extending from Lexington, in La Fayette County, Missouri, to the town of Butler, in the county of Bates, being a portion of the property acquired by contract with the Lexington, Lake and Gulf Railroad Company;" that it was graded and bridged nearly that entire distance — 82 miles; that the work was done some years ago, and was depreciating in value; that said portion of road, if completed, would be of great value to the parties in interest, and it was important to complete it "at once, and before the sale and confirmation under the decree in this case can be had;" that "said railroad and bridges are rapidly going to decay, and the field is threatened to be occupied by a rival line, which would destroy the value of said property," and that said road should at once be ironed and equipped for traffic, in order to protect, preserve, and save said property to the parties in interest. He asked authority to borrow $300,000, upon receiver's certificates, and that the indebtedness so created "be a lien upon said portion of said road before described only," and "prior to all other liens thereon, but said indebtedness to constitute no claim against any other property in the receiver's hands nor any other property except that pertaining thereto, to wit, said part of said railroad lying south of Lexington, and such additions thereto and property as may be made or acquired by said fund so borrowed." By a subsequent petition he informed the court that it would require $500,000 to do this work, and

stated other reasons why he should be permitted to build and equip the line south of Lexington for traffic. He also represented that $600,000 had been expended upon that part. The application was granted after notice to the bondholders under the $1,600,000 mortgage, and with their consent. The order authorizing the receiver to borrow $500,000 in certificates or debentures was made on March 3, 1880, and contained these provisions:

" And it is further ordered, adjudged and decreed that such certificates or debentures shall be and they are hereby adjudged to be a lien for the principal and interest thereof prior to all other liens or claims whatsoever upon that portion of said defendant's railroad before mentioned, with all of the property and appurtenances thereto belonging, to wit: . . . but upon no other property or funds in the possession of said receiver. . . .

" And the said receiver is further authorized and directed to settle and adjust, by payment or otherwise, any outstanding claims against the Lexington, Lake and Gulf Railroad Company which may seem to be prior in right to the claims of the Burlington and Southwestern Railway Company under the contract before mentioned, and to purchase in any outstanding or adverse lien or title to any portion or all of said property upon such terms as he may deem for the interest of the parties concerned, any right or title so acquired to be conveyed to him as receiver for the benefit of the parties in interest herein."

It is proper here to state that the certificates authorized by this order were not issued. But a few days after the order was made, namely, on March 12, 1880, Smith, " as receiver of the Burlington and Southwestern Railway Company, acting under authority of the Circuit Court of the United States," entered into a written agreement with Newman, representing himself and Waddell, in which it was stipulated, among other things: 1. That Newman should by quitclaim deed, properly acknowledged and executed within twenty days, and placed in the hands of J. W. Noble in escrow, convey all the right, title, and interest then held by or vested in him " in and to the

railroad and property, appurtenances and franchises of what was formerly known as the Lexington, Lake and Gulf Railroad Company, extending southwardly from the Missouri River, at Lexington, Missouri, by the way of Pleasant Hill, to a point south of Butler;" such conveyance to include all the rights and interest acquired by Newman and Waddell under the trust deed to Chapman, of January 16, 1872, and the sale made under it on the 20th of February, 1877. 2. That said receiver be substituted to all claims of every kind held by Newman and Waddell against the Lexington, Lake and Gulf Railroad Company. This agreement contained the following provisions:

"And in consideration of the premises, said party of the first part, as receiver, agrees to pay said Newman, out of the moneys coming into his hands from that part of said railroad hereinbefore mentioned, or from the sale of receiver's certificates lately authorized by said court to be issued by said receiver, or from any earnings from that portion of said road, or arising from the sale thereof under the decree of said court, and within nine months from the eighteenth day of December, 1879, the sum of seventeen thousand seven hundred and fifty dollars, it being recognized and admitted in this settlement that the claim of said Newman to the above amount is a first and prior lien upon said portion of said railroad, paramount to the mortgage to said Farmers' Loan and Trust Company; but this agreement is not to bind the receiver in reference to any other property or money coming into his hands, except from or pertaining to that part of the property aforesaid acquired from the Lexington, Lake and Gulf Railroad Company.

     *        *        *        *        *

"And it is further mutually agreed by and between the parties hereto that time is of the essence of this contract, and that in case said second party shall fail to comply on his part with the stipulations hereof said first party may have the right to have the same enforced specifically by the court in which said cause is pending or, at his option, declare this agreement absolutely null and void; and if said first party shall fail within said nine months from December 18th, 1879, to pay said $17,750.00

said second party may apply to said court for the enforcement thereof, or, at his option, he may abrogate or abandon the same absolutely, and his rights in that event shall be the same as if this contract had not been made.

"And it is distinctly understood that this agreement is made by said receiver under an order of said court, and refers to no other than said property before mentioned, and is to be paid out of no funds except such as arise from said portion of said road, and is to constitute no personal or individual claim against said Elijah Smith.

"It is further understood and agreed that when said quit-claim deed shall be delivered in escrow to said Noble that the note mentioned and described in the said trust deed to Moses Chapman, under which said Newman's claim arises, shall be, delivered to said Noble also in escrow, and said trust deed shall also be delivered to him if in possession of parties, if not, as soon as practicable; and on the compliance of the receiver with his part of this agreement said note and said trust deed shall be delivered to him, with the said quitclaim deed, as muniments of his title and as vouchers, said note to be cancelled upon payment of said $17,750.00."

So far as the record discloses, all the stipulations in this agreement, relating to Newman and Waddell, were complied with by them. The required quitclaim deed was executed, and the same, together with said notes and trust deed, were placed in the hands of Noble, in escrow, and are now held by him in that way.

On the 30th of November, 1880, the Linneus Branch road, including said property, franchises, rights, and premises of the Lexington, Lake and Gulf Railroad Company was sold, *in gross*, by a special master in the foreclosure suit, Elijah Smith, as trustee for the bondholders, becoming the purchaser at the price of one million dollars, paid *entirely in mortgage bonds held by those whom he represented.*

The present suit was commenced by petition of intervention filed in the foreclosure suit, March 7, 1881, by Newman, as trustee for himself and Waddell. After referring to the efforts of Smith to have his purchase confirmed, he prays that

said contract and agreement be enforced, and that before any order is made, confirming and approving the sale, the receiver be required to pay out of the proceeds of sale the sum of $17,750, with interest at the rate of six per cent per annum, since September 18, 1880, and for such other and further relief as may be just and proper. To this petition of intervention the complainants in the foreclosure suit filed an answer, and subsequently, July 5, 1881, obtained an order confirming the sales, approving the deed to Smith as trustee, which the master had previously submitted with his report of sale, and directing that the property be placed in his possession.

This order, however, contained the following provision: "But the said deed of conveyance and the delivery of said property to said grantee shall not be taken to affect any claim, right, interest in or lien upon or to said property sold and conveyed by said master's deed now pending in this court, or in any state court by leave of this court, but that said claim, right, interest, or lien are hereby reserved, subject to further order and decrees of this court, and the power to make further orders, decrees, and directions in reference to said property in this cause is hereby expressly reserved by the court."

On the 9th of December, 1881, an amended answer was filed by the Farmers' Loan and Trust Company, and Smith, as receiver. The cause having been heard, a final decree was rendered whereby it was ordered and adjudged that "there is justly due the intervenor named the sum of seventeen thousand seven hundred and fifty dollars, with interest thereon from the 30th day of November, A.D. 1880, at the rate of six per centum per annum until paid, and that said claim to the amount aforesaid was authorized by this court to be incurred by its receiver in this cause and was by him so incurred, and was to have been provided for and paid out of the proceeds of sale of that railroad and property described in the mortgage made to complainants by the defendant, The Burlington and Southwestern Railway Company, and which was sold on the 30th day of November, 1880, by order of this court, and the sale whereof was conditionally confirmed on July 5, 1881; that said claim not having been paid or provided for, said sale of said railroad

and property sold as aforesaid, as well as the confirmation thereof, is hereby set aside and for naught held, and said receiver of this court in this cause is hereby ordered to take exclusive possession of said railroad and property, with any additions or appurtenances thereto absolutely necessary to regain his original possession of all said property in all things the same and with all the powers in him as said receiver heretofore vested, at and upon the expiration of ninety (90) days ·from the date of this decree, unless within said last named period of ·ninety days the claim of said intervenor in the sum hereinbefore determined be paid with interest and the costs of this proceeding to said H. L. Newman, trustee as aforesaid; by said Elijah Smith, as trustee for bondholders, purchaser at said sale, and if said claim be paid as aforesaid, then said sale shall stand and said order of confirmation be final as to said demand."

From that decree the present appeal is prosecuted.

*Mr. P. Henry Smyth* for appellants.

*Mr. Tilton Davis* and *Mr. John W. Noble* for appellee. *Mr. John C. Orrick* was with them on the brief.

MR. JUSTICE HARLAN, after stating the case, delivered the opinion of the court.

From this history of the proceedings in the court below it satisfactorily appears :

1. That Newman, as trustee, had a lien upon the road south of Lexington — the same leased by the Lexington, Lake and Gulf Railway Company to the Burlington and Southwestern Railway Company for the benefit of the Linneus Branch of the latter corporation — prior and paramount to that created by the mortgage for $1,600,000.

2. That after the court passed the decree of foreclosure of May 19, 1876, the parties deemed it important to their interests that the road south of Lexington be completed for traffic before any sale took place under that decree, and to that end the receiver, with their knowledge and consent, obtained leave

to borrow money upon certificates, which should be a lien, prior to all others, upon that portion of the Burlington and Southwestern Railway acquired for its Linneus Branch under the contract of lease with the Lexington, Lake and Gulf Railroad Company of February, 1872, but upon no other property or funds in the possession of the receiver.

3. That by the same order, the receiver was directed to settle and adjust, by payment or otherwise, any outstanding claims against the lessor company which might seem to be prior in right to the claims of the lessee company under said contract of lease, and to purchase in any outstanding or adverse lien or title to any portion or all of the property, upon such terms as he deemed best for the interests of the parties concerned, " any rights or title so acquired to be conveyed to him *as receiver, for the benefit of the parties in interest herein;*" the parties here referred to being the holders of bonds under the mortgage for $1,600,000 and the trustees in that mortgage.

4. That, under the authority of this order, the receiver made, with Newman as trustee, the agreement of March 12, 1880, whereby the latter agreed to convey to the former, as receiver, all his right, title and interest in the leased premises, including any rights acquired under Chapman's sale in virtue of the trust deed of January 16, 1872, and whereby, also, the receiver agreed to pay to Newman the sum of $17,750 within nine months from December 18, 1879, such payment to be made " out of any money coming into his hands from that part of said railroad hereinbefore mentioned or from the sale of receiver's certificates [then] lately authorized by said court to be issued by said receiver, or from earnings from that portion of said road, *or arising from the sale thereof under the decree of said court;* " such agreement " not to bind the receiver in reference to any other property or money coming into his hands except from or pertaining to that part of the property aforesaid acquired from the Lexington, Lake and Gulf Railroad Company."

It is not disputed that the order authorizing the receiver to acquire by purchase for the benefit of the parties interested in

the foreclosure suit, any adverse lien upon the property decreed to be sold, was one that the court had power to make; nor is it claimed that the agreement made with Newman was beyond the authority conferred upon the receiver by its order. And it is clear that the agreement gave Newman the right to be paid out of any proceeds arising from the sale of that part of the Linneus Branch covered by the deed of trust to Chapman and by the quitclaim to the receiver. But, manifestly, this agreement, fairly interpreted, imposed upon the receiver and the parties interested in the foreclosure suit the duty of obtaining from the court (as might readily have been done) such modification of the decree of sale, passed in 1876, as would enable the court and the parties to know how much was realized from a sale of that part of the road upon which Newman's prior lien rested. That result could have been reached only by selling that part separately, or by selling the mortgage property subject to that lien. Instead of having the sale made in one or the other of the forms suggested, Smith, as agent for the mortgage trustees and bondholders — having induced Newman to surrender his claim and title — bid in the property, *as an entirety*, including the leased premises upon which Newman had a paramount lien, for one million of dollars, *payable in mortgage bonds*. It is now said that there are no proceeds or moneys arising from the leased premises which can be awarded to Newman under his agreement with the receiver. In conformity with that agreement he deposited with Mr. Noble, not only his quitclaim deed to the receiver, but the Chapman trust deed and the note secured by it; and yet, according to the contention of the appellants, his only remedy is a separate, independent suit, asserting his prior lien upon the part of the road covered by the Chapman deed of trust. This result has come from the failure of Smith, as agent for the mortgage trustees and bondholders, to carry out in good faith the agreement which he, as receiver, made with Newman, under the authority of the court, for the benefit of the same parties.

We are of opinion that the sale of the mortgaged property, as an entirety, without having obtained such modification of

the decree of 1876 as would meet the requirements of the agree-
ment with Newman, should, under the circumstances, be
deemed an election upon the part of the appellants, and those
whom they represent, not to have the mortgaged property sold
in parts, or subject to Newman's prior lien, and, consequently,
not to restrict his lien to that portion of the road embraced by
the Chapman deed; and, therefore, he was entitled to be first
paid out of the aggregate proceeds of the sale of the entire line
covered by the $1,600,000 mortgage. His right thus to be
paid is not to be defeated by the fact that the mortgage bond-
holders exercised the privilege given by the decree of sale to
make payment, not in cash, but in mortgage bonds. If they
do not discharge, in money, Newman's prior lien within a rea-
sonable time fixed for that purpose, the property, covered by
that mortgage, including the leased premises, should be again
sold as an entirety, or so much thereof sold as may be neces-
sary, to raise the amount, principal and interest, due him,
together with his costs in the court below, from the time he
filed the petition of intervention.

It may be that the same result practically would be accom-
plished for Newman by executing the decree from which the
present appeal is prosecuted. But we are of opinion that the
court below erred in setting aside — even if it had the power
to do so — the confirmation of the sale by the special master,
and the order approving the deed made to the purchaser. The
sale was confirmed, the deed to the purchaser approved, and
the latter authorized to take possession, by the order of July
5th, 1881. The reservations in that order did not authorize the
court to set aside the confirmation of the sale and cancel the
deed to the purchaser. The confirmation of the sale and the
approval of the deed were, rather, subject to the power re-
served, to protect and enforce, by subsequent orders, any claim
or lien then pending either in that court, or, by its leave, in a
state court. So far as Newman is concerned, such protection
can be given, and should be given only, by an order directing
the entire property, covered by the $1,600,000 mortgage, to be
sold, in satisfaction of his claim or lien, without annulling the
former sale or the confirmation thereof, and without withdraw-

ing or cancelling the deed made by the master to the purchaser.

*To the extent indicated the decree is reversed and the cause is remanded for further proceedings consistent with this opinion.*