## BOEING AIR TRANSPORT, Inc., v. EDELMAN, State Treasurer, et al.
### No. 2049.

District Court, D. Wyoming.
June 27, 1931.

John W. Lacey of Cheyenne, Wyo., for plaintiff.

James A. Greenwood, Atty. Gen., and Richard J. Jackson, George W. Ferguson, and Philip S. Garbutt, Asst. Attys. Gen., for defendant State Treasurer.

Harry B. Henderson, Jr., of Cheyenne, Wyo., for defendant City of Cheyenne.

T. S. Taliaferro, Jr., and F. W. Johnson, both of Rock Springs, Wyo., for defendant City of Rock Springs.

KENNEDY, District Judge.

This is a suit in equity in which the plaintiff seeks to restrain the enforcement of a state law in regard to the collection of a gasoline tax upon the gasoline used by the plaintiff in its operation of an air line in interstate commerce in connection with the use of airports at the cities of Cheyenne and Rock Springs in the state of Wyoming. The prayer of the bill seeks an interlocutory injunction and upon final hearing a permanent injunction against the collection of such tax.

The set-up of the case is one which would seem to bring it within the purview of a statutory court of three judges (28 USCA § 380), but, as no action was taken by the plaintiff to move for a hearing upon an interlocutory injunction, the case proceeded to final hearing before a single judge without objection on the part of the defendants, and we assume therefore that the court has jurisdiction of the proceeding. Seaboard Air Line Railway v. Railroad Commission, 213 F. 27 (C. C. A. 5).

The substance of the statutory enactment challenged by the plaintiff as being unconstitutional in regard to the interstate business of the plaintiff is found in chapter 14 of the Session Laws of Wyoming 1929, Special Session, reading as follows: "On and after April 1, 1929, each and every wholesaler as defined in this Act, who is now engaged or who may hereafter engage in his own name, or in the name of others, or in the name of his representatives or agents in this State, in the sale or use of gasoline as herein defined shall not later than the fifteenth of each month, render to the State Treasurer a statement of all gasoline sold or used by them in the State of Wyoming during the preceding calendar month, and pay to the State Treasurer at the same time, the license tax of four cents per gallon on all such gasoline. Said statement to the State Treasurer shall be upon blanks furnished by him, and shall be sworn to by the owner or managing agent in the case of an individual, firm or association, by the resident general agent or attorney, in the case of a foreign corporation or by one of the principal officers in the case of a domestic corporation. Every person, firm or corporation, who shall use any gasoline in this state upon which the said tax has not been paid by any wholesaler in this state, shall, on or before the 15th day of each calendar month, beginning with the first calendar month after this Act has become effective, render a true statement to the State Treasurer, duly signed and sworn to, and accompany such statement with the payment of a tax of four cents per gallon on all gasoline as shown by such statement to have been used by him; provided that before making the distribution of funds provided for in Section 1 hereof the State Treasurer shall pay over all funds received from the gasoline license tax on gasoline used at any municipal air field to the city or town where such air field is located, to be used for the maintenance and improvement of such air field."

Upon the final hearing testimony was adduced by the parties, and the following may

be considered as a sketchy outline of the facts in the case:

The plaintiff is a corporation organized and existing under the laws of the state of Washington and engaged in the operation of an air transport line upon regular schedule between Chicago, Illinois, and San Francisco, Cal. In such operation it enjoys a contract with the United States government in the transportation of United States mails, and likewise transports passengers and express for hire over its entire line. The substantial portion of its business is interstate, in fact the testimony shows that its transportation of mails, passengers, or express within the state of Wyoming is an insignificant percentage of its entire business, so that it would be impractical and impossible to determine or estimate the relative amount of gasoline which would be consumed in carrying on its intrastate business. In the operation of its air line it makes use of two landing fields owned by the defendant cities of Cheyenne and Rock Springs, respectively, at which points its planes are regularly landed on schedule for the discharge and reception of mail, passengers, and express. At these points its planes are refueled, examined, and conditioned. Some time after the passage and operation of the law which the plaintiff challenges, it began a segregation of the gasoline used by it by tolling the amount of such gasoline which was used for the operation of its ships, traveling in interstate commerce, as distinguished from the gasoline which was used in the testing of airships at the field, conditioning its motors, and sales made to other airplane users. As to the first-mentioned gasoline, the tax of 4 cents per gallon was paid to the state treasurer under protest in consideration of the high penalties fixed for a violation of the statute, but as to the latter classification of gasoline the said tax was paid thereon to the state treasurer without protest. During the period covering substantially eight months, from the 15th of March, 1930, to the 15th of November, 1930, the plaintiff paid to the state treasurer, in the amount of this protested tax, the sum of $5,529.28, representing the tax upon gasoline used in interstate commerce at the Cheyenne field, and during the same period it paid to the state treasurer $2,726.32 as representing the tax upon gasoline used in interstate commerce at the Rock Springs field. Testimony was likewise offered as to the continuing payments of said protested and unprotested amounts after the filing of the bill and substantially up to the final hearing. The amount testified to as having been paid of the unprotested tax is considerably less than that paid as the protested tax at both airports. The city of Cheyenne entered into a contract with the plaintiff company some time in the year of 1929 which provided for the use of the municipal air field by the plaintiff in the operation of its transcontinental air line. The provisions of such contract are numerous, and not all of them are material to the matter here being considered. Among other provisions of the contract, it may be said that the plaintiff and the city were to share the expense of grading additional land and building a new outlining lighting system at a cost of $7,000. The city agrees to acquire additional land for the airport for which it should pay the expense, and that it should keep the field during the term of the lease (designated as twenty-five years) as a well-maintained and well-regulated airplane landing field for the reasonable use of any and all planes and airships operated by the plaintiff. In addition, the plaintiff agrees to pay the city an annual rental of $1,050 for hangar space and taxiways, and $3,000 for rental of several hangars located on the field and owned by the city. The city agrees to pay the plaintiff $2,400 a year for the general supervision of the field, under the general direction of the city. Similar contract relations exist between the plaintiff and the city of Rock Springs, but of less magnitude owing to the smaller business of the company at that point, but involving a rental there paid by the plaintiff of $600 per year. At both ports the plaintiff has the privilege of selling gasoline to the public for airplane purposes. As to the city of Cheyenne, the money received from the state treasurer representing this tax on gasoline used at the airport is placed in an airport fund and used exclusively for the purpose of improving and maintaining the airfield. During the year last past not all of the money so received and maintained in this separate fund had been expended, but all of which had been expended was expended in connection with the airport. No direct testimony was offered by the city of Rock Springs as to its segregation of this money received from the state treasurer, except as it may be inferred that the general purpose of the law would be carried out by that municipality. In Cheyenne, at a recent popular election, a bond issue was voted upon and approved by the people authorizing the expenditure of $15,000 for various purposes in connection with the improving of its municipal air field.

Under these circumstances the plaintiff

contends that the law requiring the payment of the tax of 4 cents per gallon so segregated and used by it in the operation of its air line in interstate commerce is unconstitutional as applied to the plaintiff, in that it is in direct contravention of the commerce clause of the Constitution. Counsel in such contention rely principally upon the case of Helson v. Kentucky, 279 U. S. 245, 49 S. Ct. 279, 73 L. Ed. 683, where the state of Kentucky attempted to tax 75 per cent. of the gasoline consumed within the limits of Kentucky by a ferryboat operating exclusively in interstate commerce. The court, through Mr. Justice Sutherland, at page 248 of 279 U. S., 49 S. Ct. 279, 280, expresses the gist of the decision in the following language:

"The claim under the commerce clause of the federal Constitution was denied on the ground that the tax was confined to gasoline used within the limits of the state and the commerce clause was not affected. It is with the latter question only that we are here concerned.

"Regulation of interstate and foreign commerce is a matter committed exclusively to the control of Congress, and the rule is settled by innumerable decisions of this court, unnecessary to be cited that a state law which directly burdens such commerce by taxation or otherwise constitutes a regulation beyond the power of the state under the Constitution. * * * The power vested in Congress to regulate commerce embraces within its control all the instrumentalities by which that commerce may be carried on. Gloucester Ferry Co. v. Pennsylvania, supra, 114 U. S. page 204, 5 S. Ct. 826, 29 L. Ed. 158. A state cannot, 'lay a tax on interstate commerce in any form, whether by way of duties laid on the transportation of the subjects of that commerce, or on the receipts derived from that transportation, or on the occupation or business of carrying it on.' Leloup v. Port of Mobile, 127 U. S. 640, 648, 8 S. Ct. 1380, 1384, 32 L. Ed. 311; Lyng v. Michigan, 135 U. S. 161, 166, 10 S. Ct. 725, 34 L. Ed. 150; Ozark Pipe Line v. Monier, 266 U. S. 555, 562, 45 S. Ct. 184, 69 L. Ed. 439. While a state has power to tax property having a situs within its limits, whether employed in interstate commerce or not, it cannot interfere with interstate commerce through the imposition of a tax which is, in effect, a tax for the privilege of transacting such commerce. Adams Express Company v. Ohio, 166 U. S. 185, 218, 17 S. Ct. 604, 41 L. Ed. 965."

Later in the decision, at page 252 of 279 U. S., 49 S. Ct. 279, 281, the following language is used: "The statute here assailed clearly comes within the principle of these and numerous other decisions of like character which might be added. The tax is exacted as the price of the privilege of using an instrumentality of interstate commerce. It reasonably cannot be distinguished from a tax for using a locomotive or a car employed in such commerce. A tax laid upon the use of the ferryboat would present an exact parallel. And is not the fuel consumed in propelling the boat an instrumentality of commerce no less than the boat itself? A tax which falls directly upon the use of one of the means by which commerce is carried on directly burdens that commerce. If a tax cannot be laid by a state upon the interstate transportation of the subjects of commerce, as this Court definitely has held, it is little more than repetition to say that such a tax cannot be laid upon the use of a medium by which such transportation is effected. 'All restraints by exactions in the form of taxes upon such transportation, or upon acts necessary to its completion, are so many invasions of the exclusive power of Congress to regulate that portion of commerce between the states.' Gloucester Ferry Co. v. Pennsylvania, supra, 114 U. S. p. 214, 5 S. Ct. 833 [29 L. Ed. 158]."

In U. S. Airways v. Shaw (D. C.) 43 F. (2d) 148, a statutory court in the Tenth Circuit sitting in the Western district of Oklahoma decided a case similar in many respects to the case at bar, by declaring the statute invalid. The substance of the decision is fairly set forth in paragraphs 1 and 2 of the syllabus, which read as follows:

"State statute levying excise tax on gasoline held invalid as interference with interstate commerce as applied to air transportation companies engaged in interstate transportation business (Const. art. 1, § 8, cl. 3; Laws Okl. 1923, c. 239, as amended by Laws 1923–24, c. 101, Laws 1925, c. 198, and Laws 1929 [Sp. Sess.] cc. 278, 279).

"Complaining parties are engaged in the transportation by airplane of passengers, freight, express, and mail from points outside to points within the state and vice versa. Gasoline used as motor power in airplanes in question is purchased largely within state, and tax in question is paid through consignees and distributors of gasoline.

"Intrastate operation of air transportation company held interdependent with in-

terstate commerce, rendering gasoline used in intrastate business not subject to excise tax (Const. art. 1, § 8, cl. 3; Laws Okl. 1923, c. 239, as amended by Laws 1923–24, c. 101, Laws 1925, c. 198, and Laws 1929 [Sp. Sess.] cc. 278, 279).

"Airway companies engaged in interstate transportation business carrying passengers, freight, express, and mail from points outside to points within state, and vice versa, conducted a like intrastate transportation business without which interstate transportation business could not be efficiently and economically conducted."

Later a statutory court again in the Tenth Circuit, sitting in the district of New Mexico, rendered a similar decision in Mid-Continent Air Express Corp. v. Lujan (D. C.) 47 F. (2d) 266, holding that a tax upon gasoline used by a transport corporation in interstate commerce, where it was likewise engaged in intrastate commerce and incidental to the former, made the entire tax bad. The gist of the decision is fairly suggested in the second paragraph of the syllabus reading as follows:

"Excise tax upon all gasoline used by air transport corporation engaged in interstate commerce and intrastate commerce incidental thereto held direct burden on interstate commerce, and therefore invalid (Comp. St. N. M. 1929, §§ 60–101, 60–203).

"Air transport corporation operated from point in Texas through state of New Mexico to point in Colorado, and engaged in transporting passengers, freight, and express for hire. It also carried on intrastate business, but such business was merely incidental to interstate business. Two classes of business were so interdependent and so commingled, both with reference to receipts and expenses, that amount of gasoline used in each could not be determined and apportioned."

It is not contended that the entire tax on gasoline used at the airports in this case is invalid, for the reason that it is capable of segregation and actually has been segregated as to its use in interstate commerce and intrastate commerce, and only the enforcement of the law which purports to levy and collect the tax upon gasoline used in interstate commerce is challenged.

Were the situation in the case at bar in all respects analogous to the cases last cited, it would require no further comment from this court as to those decisions ruling this case, especially in view of the fact that three of the distinguished present Circuit Judges (Cotteral, Phillips, and McDermott) of the Tenth Circuit sat upon the statutory courts. But there is another angle of the case which makes it less clear to me on account of a peculiar feature of the statute in question. The last paragraph of the statute provides, in substance, that the tax received from gasoline used at any municipal airfield be paid by the state treasurer receiving the same to the city where such airfield is located to be used for the maintenance and improvement of such field. The query in the mind of the court is as to whether or not this does not bring the statute in question within the scope of another line of cases presenting a different feature of the law. The thought can be best expressed by a reference to some of these. In Hendrick v. Maryland, 235 U. S. 610, 35 S. Ct. 140, 59 L. Ed. 385, which is a case concerning a graduated license fee on motor vehicles engaged in interstate commerce, Mr. Justice McReynolds, in speaking for the court at page 623–624 of 235 U. S., 35 S. Ct. 140, 142, says: "In view of the many decisions of this court there can be no serious doubt that where a state at its own expense furnishes special facilities for the use of those engaged in commerce, interstate as well as domestic, it may exact compensation therefor. The amount of the charges and the method of collection are primarily for determination by the state itself; and so long as they are reasonable and are fixed according to some uniform, fair, and practical standard, they constitute no burden on interstate commerce. Transportation Co. v. Parkersburg, 107 U. S. 691, 699, 2 S. Ct. 732, 27 L. Ed. 584, 587; Huse v. Glover, 119 U. S. 543, 548, 549, 7 S. Ct. 313, 30 L. Ed. 487, 490; Monongahela Navigation Co. v. United States, 148 U. S. 312, 329, 330, 13 S. Ct. 622, 37 L. Ed. 463, 469; Minnesota Rate Cases, 230 U. S. 352, 405, 33 S. Ct. 729, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18, and authorities cited. The action of the state must be treated as correct unless the contrary is made to appear. In the instant case there is no evidence concerning the value of the facilities supplied by the state, the cost of maintaining them, or the fairness of the methods adopted for collecting the charges imposed; and we cannot say from a mere inspection of the statute that its provisions are arbitrary or unreasonable."

In Postal Telegraph Cable Company v. City of Richmond, 249 U. S. 252, 39 S. Ct. 265, 63 L. Ed. 590, involving a tax to be paid by a telegraph company engaged in interstate and intrastate business, Mr. Justice Clarke

at pages 259–260 of 249 U. S., 39 S. Ct. 265, 266, says: "Even if the net returns from the intrastate business should not equal such tax, and it must be paid from interstate earnings, this alone would not be conclusive against its validity. If the method of doing interstate business necessarily imposes duties and liabilities upon a municipality, it may not be charged with the cost of these without just compensation. Even interstate business must pay its way—in this case for its right of way and the expense to others incident to the use of it. St. Louis v. Western Union Telegraph Co., 148 U. S. supra, pages 98 et seq., 13 S. Ct. 485, 37 L. Ed. 380; Atlantic & Pacific Telegraph Co. v. Philadelphia, 190 U. S. 160, 163, 23 S. Ct. 817, 47 L. Ed. 995; St. Louis v. Western Union Telegraph Co., 149 U. S. 465, 13 S. Ct. 990, 37 L. Ed. 810. Such compensation should also include the expense of inspection of the poles and wires used, and of such supervision of the business of the company conducted in the streets as may be reasonably necessary to secure the safety of life and property of the inhabitants and of the users of the streets; but with the authority in the courts, on proper application, to determine whether, under the conditions prevailing in a given case, the charge made is reasonably proportionate to the service to be rendered and the liabilities involved, or whether it is a disguised attempt to impose a burden on interstate commerce. St. Louis v. Western Union Telegraph Co., 148 U. S. 92, 13 S. Ct. 485, 37 L. Ed. 380; St. Louis v. Western Union Telegraph Co., 149 U. S. 465, 13 S. Ct. 990, 37 L. Ed. 810; Postal Telegraph-Cable Co. v. Baltimore, 156 U. S. 210, 15 S. Ct. 356, 39 L. Ed. 399; Atlantic & Pacific Telegraph Co. v. Philadelphia, 190 U. S. 160, 163, 23 S. Ct. 817, 47 L. Ed. 995; Western Union Telegraph Co. v. Pennsylvania R. R. Co., 195 U. S. 540, 566, 25 S. Ct. 133, 49 L. Ed. 312, 1 Ann. Cas. 517; Western Union Telegraph Co. v. Richmond, 224 U. S. 160, 169, 32 S. Ct. 449, 56 L. Ed. 710."

In Kane v. State of New Jersey, 242 U. S. 160, 37 S. Ct. 30, 61 L. Ed. 222, involving the registration fee of vehicles of nonresidents moving in interstate commerce, a paragraph of the syllabus reads as follows: "As applied to vehicles of nonresidents moving in interstate commerce as well as to vehicles of residents, the amount of the registration fee may properly be based not only on the cost of inspection and regulation, but also on the cost of maintaining improved roads."

In Clark v. Poor, 274 U. S. 554, at pages 556–557, 47 S. Ct. 702, 703, 71 L. Ed. 1199, Mr. Justice Brandeis, in discussing a tax upon motor vehicles operating as common carriers exclusively in interstate commerce, says: "The plaintiffs claim that, as applied to them, the act violates the commerce clause of the federal Constitution. They insist that, as they are engaged exclusively in interstate commerce, they are not subject to regulation by the state; that it is without power to require that before using its highways they apply for and obtain a certificate; and that it is also without power to impose, in addition to the annual license fee demanded of all persons using automobiles on the highways, a tax upon them, under section 614–94, for the maintenance and repair of the highways and for the administration and enforcement of the laws governing the use of the same. The contrary is settled. The highways are public property. Users of them, although engaged exclusively in interstate commerce, are subject to regulation by the state to ensure safety and convenience and the conservation of the highways. Morris v. Duby, 274 U. S. page 135, 47 S. Ct. 548, 71 L. Ed. 966; Hess v. Pawloski, 274 U. S. p. 352, 47 S. Ct. 632, 71 L. Ed. 1091. Users of them, although engaged exclusively in interstate commerce, may be required to contribute to their cost and upkeep. Common carriers for hire, who make the highways their place of business, may properly be charged an extra tax for such use. Hendrick v. Maryland, 235 U. S. 610, 35 S. Ct. 140, 59 L. Ed. 385; Kane v. New Jersey, 242 U. S. 160, 37 S. Ct. 30, 61 L. Ed. 222. Compare Packard v. Banton, 264 U. S. 140, 144, 44 S. Ct. 257, 68 L. Ed. 596."

Later the same justice in Sprout v. City of South Bend, 277 U. S. 163, at page 169, 48 S. Ct. 502, 504, 72 L. Ed. 833, 62 A. L. R. 45, in discussing a license fee imposed upon those engaged in interstate commerce, says: "It is true that, in the absence of federal legislation covering the subject, the state may impose, even upon vehicles using the highways exclusively in interstate commerce, nondiscriminatory regulations for the purpose of insuring the public safety and convenience; that licensing or registration of busses in a measure appropriate to that end; and that a license fee no larger in amount than is reasonably required to defray the expense of administering the regulations may be demanded. Hendrick v. Maryland, 235 U. S. 610, 622, 35 S. Ct. 140, 59 L. Ed. 385; Kane v. New Jersey, 242 U. S. 160, 37 S. Ct. 30, 61 L. Ed. 222; Morris v. Duby, 274 U. S. 135,

47 S. Ct. 548, 71 L. Ed. 966; Clark v. Poor, 274 U. S. 554, 47 S. Ct. 702, 71 L. Ed. 1199. Compare Hess v. Pawloski, 274 U. S. 352, 47 S. Ct. 632, 71 L. Ed. 1091. These powers may also be exercised by a city if authorized to do so by appropriate legislation. Compare Erb v. Morasch, 177 U. S. 584, 585, 20 S. Ct. 819, 44 L. Ed. 897; Mackay Telegraph Co. v. Little Rock, 250 U. S. 94, 99, 39 S. Ct. 428, 63 L. Ed. 863. Such regulations rest for their validity upon the same basis as do state inspection laws, Patapsco Guano Co. v. Board of Agriculture, 171 U. S. 345, 18 S. Ct. 862, 43 L. Ed. 191; Red 'C' Oil Co. v. Board of Agriculture, 222 U. S. 380, 32 S. Ct. 152, 56 L. Ed. 240, and municipal ordinances imposing on telegraph companies, though engaged in interstate commerce, a tax to defray the expense incident to the inspection of poles and wires. Western Union Telegraph Co. v. New Hope, 187 U. S. 419, 23 S. Ct. 204, 47 L. Ed. 240; Postal Telegraph-Cable Co. v. Richmond, 249 U. S. 252, 258, 39 S. Ct. 265, 63 L. Ed. 590; Mackay Telegraph Co. v. Little Rock, 250 U. S. 94, 99, 39 S. Ct. 428, 63 L. Ed. 863."

The most recent pronouncement of the high court called to my attention is that found in Interstate Transit Co., Inc., v. Dick Lindsey, 283 U. S. 183, 51 S. Ct. 380, 381, 75 L. Ed. 953, decided April 13, 1931. In that case a tax imposed by the state of Tennessee on busses engaged in interstate commerce was held unconstitutional. The basis of the decision, however, is the fact that the Tennessee statute was upon its face not enacted for any purpose looking to the construction and maintenance of the state highways, but was merely a privilege tax for the carrying on of interstate business. The pertinent portion of the opinion setting forth legal principles which may be said to apply to the case at bar is as follows: "While a state may not lay a tax on the privilege of engaging in interstate commerce, Sprout v. South Bend, 277 U. S. 163, 48 S. Ct. 502, 72 L. Ed. 833, 62 A. L. R. 45, it may impose even upon motor vehicles engaged exclusively in interstate commerce a charge, as compensation for the use of the public highways, which is a fair contribution to the cost of constructing and maintaining them and of regulating the traffic thereon. Kane v. New Jersey, 242 U. S. 160, 168, 169, 37 S. Ct. 30, 61 L. Ed. 222; Clark v. Poor, 274 U. S. 554, 47 S. Ct. 702, 71 L. Ed. 1199; Sprout v. South Bend, supra, 277 U. S. pages 169, 170, 48 S. Ct. 502. As such a charge is a direct burden on interstate commerce, the tax cannot be sustained unless it appears affirmatively, in some way, that it is levied only as compensation for use of the highways or to defray the expense of regulating motor traffic. This may be indicated by the nature of the imposition, such as a mileage tax directly proportioned to the use, Interstate Busses Corp. v. Blodgett, 276 U. S. 245, 48 S. Ct. 230, 72 L. Ed. 551, or by the express allocation of the proceeds of the tax to highway purposes, as in Clark v. Poor, supra, or otherwise. Where it is shown that the tax is so imposed, it will be sustained unless the taxpayer shows that it bears no reasonable relation to the privilege of using the highways or is discriminatory. Hendrick v. Maryland, 235 U. S. 610, 612, 35 S. Ct. 140, 59 L. Ed. 385; Interstate Busses Corp. v. Blodgett, 276 U. S. 245, 250-252, 48 S. Ct. 230, 72 L. Ed. 551. Compare Interstate Busses Corp. v. Holyoke Street Ry., 273 U. S. 45, 51, 47 S. Ct. 298, 71 L. Ed. 530. But the mere fact that the tax falls upon one who uses the highway is not enough to give it presumptive validity."

Applying the principle of these decisions to the facts and the statute in the case at bar, it seems to me, it falls within such principle and must be ruled accordingly. Certainly there cannot be said to be substantial distinction, because in the case at bar the tax is not assessed by the municipality, but is assessed under a state law and later turned over to the municipality for the particular use designated. The result to the plaintiff is, of course, the same. Here, the tax on the gasoline used by the plaintiff in interstate commerce is returned directly to the municipality for the maintenance and improvements of the air fields which the plaintiff is using and in the end results in a benefit to the plaintiff. Under the logic of the decisions above cited, even interstate commerce must assist in paying its own way. The evidence in the case shows beyond peradventure that the much greater portion of the airplane traffic at these municipal ports is that of plaintiff in the operation of its interstate planes. Presumably, therefore, it would secure the greater benefit in the matter of enlargement, improvement, and maintenance of the fields at high standard. Neither can we see any way to make a substantial distinction for the purposes of the question here, between the maintenance of city streets or public highways, as discussed in the Supreme Court cases, and an airplane landing field open to all planes for general use. The facility of good operating conditions, although different in the matter of use, is apparent in both.

136

■ The only limitation under such circumstances is that the tax should not be discriminatory, and that it should be no larger in amount than is reasonably necessary to carry on the legitimate purpose for which it is intended. Sprout v. South Bend, supra. As to the amount of such tax as compared with its use to the purposes intended, it depends largely upon the judgment of the taxing authority, so long as the rule of reason is in control. Hendrick v. State of Maryland, supra. Neither is reasonableness of the tax to be measured merely by the value of the land occupied, or the profits of the business, or by the amount expended in any particular year. Western Union Telegraph v. New Hope, 187 U. S. 419, 23 S. Ct. 204, 47 L. Ed. 240.

■ Considering the entire evidence in this case, taking into account all the expenses that the municipalities have heretofore had, are having, and contemplate having in the future in the matter of improving their municipal airports, I am not prepared to say that the tax so challenged is not fairly commensurate with the general purposes for which it is intended. We all know that municipalities throughout the land are continually expending from time to time many thousands of dollars in acquiring, perfecting, and improving their airports in the matter of keeping pace with the great forward strides of air transportation. It seems but fair that all this should be taken into consideration in determining the issues in this case. The airports of the future must be made great terminal facilities to accommodate this ever-increasing traffic, and any tax received and devoted exclusively to this purpose will undoubtedly in the stretch of time be inadequate to meet the reasonable demands of extension and improvement.

For the reasons stated, findings, conclusions, and a decree may be submitted, dismissing the bill at plaintiff's cost and reserving to it proper exceptions.