8 P.(2d) 103

**TRANSCONTINENTAL & WESTERN AIR, Inc., v. LUJAN, State Comptroller.**

No. 3678.

Supreme Court of New Mexico.
Dec. 21, 1931.

Rehearing Denied Feb. 26, 1932.

E. K. Neumann, Atty. Gen., and Frank H. Patton, Asst. Atty. Gen., for appellant.

A. T. Rogers, Jr., of East Las Vegas, for appellee.

WATSON, J.

This is a suit by an interstate carrier against Rupert Asplund, then state comptroller, to enjoin the latter from collecting certain state gasoline excise taxes in so far as they affect the former. Lujan, having succeeded to the office, has been substituted as defendant and appellant. The facts were stipulated. The carrier obtained from the trial court the full relief sought, and the comptroller has appealed.

Appellee is engaged in transportation by air across this state. Its only stop in New Mexico is at Albuquerque, where it receives and discharges passengers, etc., and refuels its planes. The statutes objected to are found in the 1929 Compilation, and are as follows:

"There is hereby levied and imposed an excise tax of five cents per gallon upon the use of all gasoline and motor fuel used in this state for any purpose; provided, that in the collection of such tax a deduction shall be allowed of the amount of the excise tax paid in this state by distributors or dealers upon the sale of the gasoline so used." (§ 60-101).

"There is hereby levied and imposed an excise tax of five cents per gallon upon the sale of all gasoline sold in this state, except gasoline sold in original packages or containers as purely inter-state commerce sales." (§ 60-203).

Under section 60-101, the tax is collected from the user. Under § 60-203 it is collected from the seller. It is stipulated that the sales tax (§ 60-203) is passed on by the dealer and is included in the price appellee pays.

The sole contention is that these statutes, in their operation and effect upon appellee, are repugnant to the commerce clause of the Federal Constitution, art. 1, § 8.

Appellee is able to cite direct authority in support of this contention and of the judgment appealed from. Mid-Continent Air Ex-

press Corporation v. Lujan (D. C.) 47 F.(2d) 266. There a statutory three-judge court decreed the unconstitutionality of these taxes, as applied to interstate commerce, and enjoined their collection. The only distinction between that case and this is one favorable to appellee. Its business is undoubtedly purely interstate. The business of the Mid-Continent Corporation was mixed, but inseparable as to receipts and expenses.

The decision starts with the proposition that the taxes in question are excises. This court has already reached that conclusion. George E. Breece Lumber Co. v. Mirabal, 34 N. M. 643, 287 P. 699. Having identified the taxes as excises, the three-judge court concluded that the case was ruled by Helson v. Kentucky, 279 U. S. 245, 49 S. Ct. 279, 281, 73 L. Ed. 683, which was said to have held that the excise tax there in question fell directly upon the use of the means by which interstate commerce was carried on and directly burdened that commerce. If the conclusion was sound, there is no more to be said.

It seems, however, that the Mid-Continent decision failed to note any distinction between the sales tax imposed by section 60-203 and the use or consumption tax imposed by section 60-101. Its ban fell equally on both.

It is not a necessary, and we think not a proper, conclusion from Helson v. Kentucky, supra, that all state excises burdening interstate commerce are void. The tax there disapproved was in form upon the sale of gasoline within the commonwealth, but "sale" was so defined by the statute as to include a purchaser without the state for use in the state. The complaining ferryboat operators were citizens and residents of Illinois. They purchased all their gasoline in that state, and it was there delivered to them. It was used as fuel partly on the Kentucky side of the river. So, the tax, as sought to be enforced against the ferry company, was an excise upon the use or consumption of an instrumentality of interstate commerce and was said directly to burden it.

Under that authority we cannot uphold section 60-101 as against one who has procured his gasoline in another state and who has used it in this state, as fuel for the propulsion of vehicles in interstate commerce.

But the judgment appealed from and the decree in the Mid-Continent Case go further. They enjoin the collection of the sales tax under section 60-203. That presents a different question, one not ruled by Helson v. Kentucky, supra, and involving, as it seems to us, different principles.

The question is whether a purchaser of an article of merchandise within this state may avoid the state tax imposed upon its sale, affecting him indirectly, by showing that the article is purchased for employment as an instrumentality of interstate commerce. Reverting to the Helson Case, would the ferry company have been immune from the Kentucky excise if it had purchased its gasoline in that state?

Appellee's argument runs thus: "While the Helson Case actually involved the excise

tax as imposed on the use of gasoline in interstate commerce, the court decided the broad principle that such an excise tax imposed on any instrumentality of interstate commerce was void. Such tax on gasoline would obviously be void whether the tax were imposed on the use thereof in interstate commerce or the purchase thereof in the state for such use. The result is the same. The viciousness of such tax is not in its form but in its substance and effect, as Appellant admits. The tax on the use and on the purchase for use operate equally as a burden and a restraint upon such commerce. That case clearly holds that a tax on the airplanes of appellee would be void and yet the airplanes themselves are no more indispensable to Appellee's air commerce than the gasoline, without which they could not be propelled."

Thus appellee relies upon an analogy between use taxes and sale taxes. In a recent case Mr. Justice Sutherland remarked: "The difference between an excise tax based on sales and one based on use of property is obvious and substantial." Hart Refineries v. Harmon, 278 U. S. 499, 49 S. Ct. 188, 189, 73 L. Ed. 475.

One difference is that, while the use tax (section 60-101) is imposed directly upon appellee, the sales tax (section 60-203) falls only indirectly upon it. Such a distinction might be of the shadow rather than of the substance. Postal Telegraph Cable Co. v. Adams, 155 U. S. 688, 15 S. Ct. 268, 270, 360, 39 L. Ed. 311. Looney v. Crane Co., 245 U. S. 178, 38 S. Ct. 85, 62 L. Ed. 230. What in

actual effect is a direct burden may probably not be imposed by devising an indirect system. But here there is no pretense or mystery in the system. It has no hidden or ulterior objects. The first thought is that this indirect tax, if so called, imposes an indirect burden.

The use tax comes to this: For the privilege of traversing New Mexico in the air, of landing on our soil, and of transporting mail and passengers into and out of our state, we exact a price measured by the quantity of gasoline consumed. This seems to transgress the rule formulated in Atlantic & Pacific Telegraph Co. v. Philadelphia, 190 U. S. 160, 23 S. Ct. 817, 818, 47 L. Ed. 995: "No state can compel a party, individual, or corporation to pay for the privilege of engaging in interstate commerce." See, also, Crutcher v. Kentucky, 141 U. S. 47, 11 S. Ct. 851, 35 L. Ed. 649. Barrett v. New York, 232 U. S. 14, 34 S. Ct. 203, 58 L. Ed. 483. So considering the effect of the Kentucky tax, the Supreme Court condemned it, saying: "The tax is exacted as the price of the privilege of using an instrumentality of interstate commerce." Helson v. Kentucky, supra.

On the other hand, as we see it, such burden as the sales tax creates is "the mere incidental effect of the requirement of the usual proportional contribution to public maintenance." Postal Telegraph Co. v. Adams, supra. Adams Express Co. v. Ohio State Auditor, 165 U. S. 194, 17 S. Ct. 305, 41 L. Ed. 683. Hump Hairpin Mfg. Co. v. Emmer-

son, 258 U. S. 290, 42 S. Ct. 305, 307, 66 L. Ed. 622.

The statute does not of its own force impose a burden upon appellee or its business. As a matter of law, it is not required to purchase gasoline in this state. The exigencies of its business may require it. If so, the resulting burden is the incidental, not the *direct*, result of the law. On the other hand, the use tax is an inescapable and direct burden. Armour & Co. v. Virginia, 246 U. S. 1, 38 S. Ct. 267, 269, 62 L. Ed. 547.

The sales tax has to do only with our own commerce. The use tax is a thrust at the commerce of sister states. If appellee will buy its gas in New Mexico, it will avoid the use tax. But if it buys in Texas or Arizona, equally with us entitled to exact a sales tax, it must pay also for the privilege of using the gasoline here. The exact legal effect of this distinction we do not assume to appraise. But, if such taxes were general in the several states, we should again have a measure of preferences and reprisals, one of the conditions which lead to the forming of the Union and to the adoption of the commerce clause.

No other case cited by appellee is directly in point, or opposed, as we see it, to the conclusion we here reach, with the possible exception of U. S. Airways, Inc., v. Shaw (D. C.) 43 F.(2d) 148. If it be in point, like Mid-Continent Air Express Corporation v. Lujan, supra, it relies entirely upon Helson v. Kentucky, supra, as a controlling authority. A recent opinion by Kennedy, District Judge,

in Boeing Air Transport, Inc., v. Edelman (D. C.) 51 F.(2d) 130, also takes that view.

Another three-judge court, however, in a recent decision, agrees with our estimate of Helson v. Kentucky, supra, and on that and other grounds not here urged reaches the conclusion we here arrive at. Central Transfer Co. v. Commercial Oil Co. (D. C.) 45 F. (2d) 400.

The first effort of appellee's counsel, in his able argument, is to avoid this conclusion. His first proposition is that the tax is a "direct burden" on appellee's interstate commerce. He cites Panhandle Oil Co. v. Mississippi, 277 U. S. 218, 48 S. Ct. 451, 453, 72 L. Ed. 857, 56 A. L. R. 583, wherein a gasoline sales tax was adjudged unenforceable as to sales to the United States for the use of its coast guard fleet and its veterans' hospital.

That case is not controlling, since no regulation, restraint, or burden of or upon interstate commerce was there involved. Yet in counsel's hands it is a weapon not to be disregarded. As we have seen, the decisive question in cases under the commerce clause has been whether the burden imposed upon interstate commerce was direct or indirect. Here we have a decision that the sales tax is a direct burden upon "the exertion by the United States of its constitutional powers to operate the fleet and hospital," and that "to use the number of gallons sold the United States as a measure of the privilege tax is in substance and legal effect to tax the sale. * * * And that is to tax the United States—to exact tribute on its transactions

and apply the same to the support of the State."

Counsel would substitute, in these quotations, appellee and its right to carry on interstate commerce, for the United States and its governmental powers, and thus confront us with a controlling formula.

Thus stating the matter, we have a rather startling proposal. Is it true that, in challenging the New Mexico sales tax as applied to it, appellee is the equal of the United States, challenging the Mississippi sales tax as applied to it? May each claim the same freedom from state taxation, and on the same or analogous principles?

The source of such immunity as each enjoys is the Federal Constitution. But, the one is so necessary to and inherent in the scheme of dual sovereignty that it neither needed nor found expression in the organic law. The other is secured only by an express delegation of power to the Congress "to regulate Commerce * * * among the several States." Const. U. S. art. 1, § 8. The one goes to the very existence of the respective sovereignties. The other is of high importance, but nevertheless concerns policy only. See Metcalf v. Mitchell, 269 U. S. 514, 46 S. Ct. 172, 174, 70 L. Ed. 384, where Mr. Justice Stone, speaking for the court, discusses the principles involved in the exemption of the dual sovereignties from each other's taxation, and Minnesota Rate Cases (Simpson v. Shepard) 230 U. S. 352, 33 S. Ct. 729, 739, 57 L. Ed. 1511, loc. cit. 1540, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18, where

Mr. Justice Hughes, now Chief Justice, speaking for the court, discusses "the general principles governing the exercise of state authority when interstate commerce is affected."

The underlying principle involved in Metcalf v. Mitchell, supra, is that a free government is not subject, itself, or through its agencies or instrumentalities, to any tax exactions. The only reason for modifying this principal or for tolerating any taxation by one sovereignty affecting the other is the peculiar relations of the two, ruling, as they do, over the same territory and the same citizenship. Both must exist and find revenue. So, as Mr. Justice Stone said: "The limitation upon the taxing power of each, so far as it affects the other, must receive a practical construction which permits both to function with the minimum of interference each with the other; and that limitation cannot be so varied or extended as seriously to impair either the taxing power of the government imposing the tax * * * or the appropriate exercise of the functions of the government affected by it." Metcalf v. Mitchell, supra.

On the other hand, commerce is a natural and legitimate subject of taxation. Interstate commerce is sacred only because of the exclusive power of the congress to regulate it. Many forms of state taxation are permitted, even though a burden may fall upon those engaged in commerce among the states. "Even interstate commerce must pay its way." Postal Telegraph Co. v. Richmond, 249 U. S. 252, 39 S. Ct. 265, 266, 63 L. Ed.

590. It is only such state taxation as amounts to regulation that the Constitution and the decisions inhibit.

In a case sustaining a claimed immunity for a federal agency from a state tax, Mr. Justice Holmes said: "The cases upon the regulation of interstate commerce can not be relied upon as furnishing an answer. They deal with the conduct of private persons in matters in which the States as well as the general government have an interest and which would be wholly under the control of the States but for the supervening destination and the ultimate purpose of the acts. Here the question is whether the state can interrupt the acts of the general government itself. With regard to taxation, no matter how reasonable, or how universal and undiscriminating, the State's inability to interfere has been regarded as established since M'Culloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579. The decision in that case was not put upon any consideration of degree but upon the entire absence of power on the part of the States to touch, in that way at least, the instrumentalities of the United States; [M'Culloch v. Maryland] 4 Wheat. 429, 430, 4 L. Ed. 579; and that is the law today. Farmers' & M. Sav. Bank v. Minnesota, 232 U. S. 516, 525, 526, 34 S. Ct. 354, 58 L. Ed. 706, 711." Johnson v. Maryland, 254 U. S. 51, 41 S. Ct. 16, 65 L. Ed. 126.

In a later case, he drew the distinction sharply, saying: "The criterion of interference by the States with interstate commerce is one of degree. * * * The rule as to instrumentalities of the United States on the other hand is absolute in form and at least stricter in substance." Gillespie v. Oklahoma, 257 U. S. 501, 42 S. Ct. 171, 172, 66 L. Ed. 338.

The principles are thus so different that we are not to conclude that a state tax, condemned as affecting a federal agency, is necessarily invalid as bearing upon interstate commerce.

But relying upon the language of the two decisions (Helson v. Kentucky and Panhandle Oil Co. v. Mississippi), the argument is that, as against an instrumentality either of interstate commerce or of the government, a state tax must fall if found to impose a "direct burden." That was the fatal phrase in each case. So the syllogism runs: All direct burdens are prohibited. The sales tax is a direct burden. Therefore, the sales tax is prohibited. If "direct burden" is a phrase of exact significance, and so employed in both decisions, we must perhaps yield to the logical conclusion.

In decisions under the commerce clause the term "direct burden" is much employed. It amounts to a verdict of "guilty." Yet it may be doubted if it has a definite and fixed meaning. As is well settled, it refers to the substance rather than the form. A few illustrations of the phrase's significance may be mentioned.

In Helson v. Kentucky, supra, the court said that the tax was "exacted as the price of the privilege of using an instrumentality

of interstate commerce." So, it imposed a "direct burden" in that sense.

In Hump Hairpin Mfg. Co. v. Emmerson, supra, Mr. Justice Clarke stated the matter thus: "While a state may not use its taxing power to regulate or burden interstate commerce * * * on the other hand it is settled that a state excise tax which affects such commerce, not directly, but only incidentally and remotely, may be entirely valid where it is clear that it is not imposed with the covert purpose or with the effect of defeating federal constitutional rights. As coming within this latter description, taxes have been so repeatedly sustained where the proceeds of interstate commerce have been used as one of the elements in the process of determining the amount of a fund (not wholly derived from such commerce) to be assessed, that the principle of the cases so holding must be regarded as a settled exception to the general rule. * * * The turning point of these decisions is whether in its incidence the tax affects interstate commerce so directly and immediately as to amount to a genuine and substantial regulation of, or restraint upon it, or whether it affects it only incidentally or remotely, so that the tax is not in reality a burden, although in form it may touch and in fact distantly affect it."

In Armour & Co. v. Virginia, supra, Mr. Justice White put it thus:

"It follows therefore that if the asserted disadvantage be real and not imaginary, it would be one not direct because not arising from the operation and effect of the statute, but indirect as a mere consequence of the situation of the persons and property affected and of the nondiscriminating exercise by the state of power which it had a right to exert without violating the Constitution—which is indeed but to say that the disadvantage relied upon, if any, is but the indirect result of our dual system of government.

"In other words, to resume, the error of the argument results from confounding the direct burden necessarily arising from a statute which is unconstitutional because it exercises a power concerning interstate commerce not possessed or because of the unlawful discriminations which its provisions express or by operation necessarily bring about and the indirect and wholly negligible influence on interstate commerce, even if in some aspects detrimental, arising from a statute which there was power to enact and. in which there was an absence of all discrimination, whether express or implied as the result of the necessary operation and effect of its provisions. The distinction between the two has been enforced from the beginning as vital to the perpetuation of our constitutional system."

In Postal Telegraph Co. v. Adams, supra, Mr. Chief Justice Fuller, discussing interferences with the commercial power by state taxation, puts on one side such interference as is "direct" and on the other such as is "the mere incidental effect of the requirement of the usual proportional contribution to public maintenance."

Here, we have a tax not directed at or discriminating against interstate commerce; not directly imposed upon it or those engaged in it; affecting it only as any tax must burden any commerce, by adding to the expense of business. It is not exacted as the price or condition of doing business in this state. The burden on interstate commerce does not result from the statute itself, but from the situation of appellee and the exigencies of its business. We think that such a tax is within the power of the state and not regulatory of, and only incidentally burdensome to, interstate commerce.

While "direct burden" has an acquired meaning more or less definite, as the criterion in commerce cases, we do not find it so in government agency cases. In Panhandle Oil Co. v. Mississippi, supra, it was a striking fact that state revenues were enhanced in the exact measure that the federal appropriations were drawn upon. In that sense the tax was said "directly to retard, impede, and burden the exertion by the United States of its constitutional powers to operate the fleet and hospital." When Mr. Justice Butler was laying down the rule he did not use the word "direct." He said: "The states may not burden or interfere with the exertion of national power or make it a source of revenue or take the funds raised or tax the means used for the performance of federal functions."

The phrase "direct interference" was used in Metcalf v. Mitchell, supra. There, as is often the case, the determinative question was the nature of the claimed agency—the intimacy of its connection "with the exercise of a power or the performance of a duty by the one government." It was there said that the connection may be so intimate that "any taxation * * * would be such a direct interference * * * as to be plainly beyond the taxing power." Conversely, the connection may be so remote, as was the conclusion in that case, that no taxation would be objectionable.

The taxing power of the state on the one hand, and the exclusive commercial power of congress on the other, have been fruitful of litigation. The principles are well established. To apply them requires nice judgment, a balance of practical considerations, and produces close decisions. We do not assume to speak with authority. We are not persuaded, however, by the able argument for appellee, and are impressed that to sustain it would be to fritter away the rights of the state. This is not our duty or privilege, though we recognize fully that appellee's claim under the Federal Constitution, if sound, is paramount, and should be protected as graciously here as in the courts of the United States.

We conclude that the trial court correctly enjoined the enforcement of the use tax as against appellee, but erroneously enjoined the collection of the sales tax on purchases made by appellee.

To facilitate a review of this decision, it may be convenient for appellee to have the judgment settled and entered in this court. Should application be made within twenty

days, such will be the procedure. Otherwise the cause will be remanded to the district court, with a direction to set aside its judgment and to enter a new judgment conforming hereto.

It is so ordered.

### On Motion for Rehearing.

Appellee expresses fear that it did not sufficiently impress upon us, and that we did not sufficiently consider, the peculiar facts in the case. It was stipulated that the purchase of gasoline in New Mexico is essential to appellee's operations, and that included in the purchase price which appellee pays is as much as $7,200 per year on account of this tax. These facts, which we did not overlook, do not, in our judgment, affect the decision.

Appellee now, for the first time, seeks to bring additional facts into the case as proper subjects of judicial notice. He points out that it is matter of common knowledge that a special high-test gasoline, not used for any other purpose, is required for the operation of aircraft. This might perhaps be judicially noticed. But appellee proceeds to construct upon it a fact situation not in the case and which we are not at liberty to assume. He suggests that this case be deemed to involve special high-test gasoline, imported into the state by the dealer for sale to appellee alone, for use as an instrumentality of interstate commerce. Whether this situation would vary the decision we need not consider. It was not presented to the district court, nor was the injunction which appellee here seeks to sustain limited to it.

The focus of appellee's argument on the motion is upon the distinction we have sought to make between the use tax and the sales tax. That distinction failing, Helson v. Kentucky, supra, would control.

It is urged that it is as necessary to appellee's business to buy gasoline in New Mexico as to use it here; that it is of no more force to say that the statute does not require purchase in New Mexico than it would have been in the Helson Case to say that the statute did not require use in Kentucky; that a sales tax recognizable as specific, and admittedly passed on to the purchaser, imposes a direct burden within the meaning of the decisions, and is equivalent to a tax on the privilege of buying or the privilege of using; that either form of the tax has the same substantial result, operating as a burden upon the revenues or earnings of interstate commerce. It is urged that the sale for use, the purchase for use, and the use, in interstate commerce are inseparable parts of the same transaction, just as if the gasoline were purchased to be shipped outside the state as a commodity. It is urged finally that a business exclusively interstate must be exempt from any and all state excises, because in such case there is no room for claiming that the business should "pay its way," and, in effect, there is a taking of the earnings of interstate commerce with no quid pro quo.

While we have fully considered these contentions, we doubt if it would be useful to express such further views as we may entertain of their soundness or force, separately or collectively. Another tribunal must finally establish the controlling precedent.

We are strongly impressed that the use tax is distinguishable from the sales tax, not only in form, but in operation and effect. The obvious purpose of the use tax in this state is to supplement the sales tax, rendering it impossible legally to avoid the latter by purchasing out of the state for use in the state. Users of gasoline are required to report and pay the tax only on such gasoline as was not purchased from a licensed dealer. 1929 Comp. § 60-102. It is one thing to tax appellee for using, as an instrumentality of interstate commerce, its own property, upon which perchance it has already paid lawful excises imposed by other states. It is quite a different thing, we think, to tax the business of selling gasoline, which, by force of circumstances only, adds to the expense of appellee's interstate business.

Since this suit was instituted the Legislature has made provision for refunds to purchasers of gasoline for use otherwise than in motor vehicles operated on the highways. Laws 1931, c. 31. Appellee suggests that this may well be considered as a legislative construction of 1929 Comp. § 60-203, and as evincing legislative intent to exempt gasoline sold for aircraft use. The history of gasoline tax legislation in this state will not warrant such construction.

The motion for rehearing will be denied. Pursuant to appellee's request, judgment will be entered in this court. Unless counsel shall agree upon its terms, a date will be fixed for settling them.

BICKLEY, C. J., and PARKER, SADLER, and HUDSPETH, JJ., concur.