**GOLDEN. EAGLE WESTERN LINES, Inc., v. BINGAMAN, Commissioner of Revenue of New Mexico, et al.**

No. 2765.

District Court, D. New Mexico.

July 19, 1935.

BRATTON, Circuit Judge, dissenting.

———◆———

Earl A. Bagby, of Los Angeles, Cal., and E. R. Wright, of Santa Fé, N. M., for plaintiff.

Frank H. Patton, Attorney General, of the State of New Mexico, for defendants.

Before McDERMOTT and BRATTON, Circuit Judges, and NEBLETT, District Judge.

PER CURIAM.

By section 2, chapter 176, Laws of 1933, the New Mexico Legislature "levied and imposed an excise tax of five cents (5¢) per gallon upon the sale and use of all gasoline and motor fuel sold or used in this state for any purpose except gasoline sold in interstate commerce."

Plaintiff operates a bus line through New Mexico, doing no intrastate business. It buys no gasoline in the state,[1] Transcontinental & Western Air Co. v. Lujan, 36 N.M. 64, 8 P.(2d) 103, nor does it store gasoline in the state, American Airways, Inc., v. Wallace (D.C.) 57 F.(2d) 877, affirmed 287 U.S. 565, 53 S.Ct. 15, 77 L.Ed. 498; Nashville, C. & St. L. R. Co. v. Wallace, 288 U.S. 249, 53 S.Ct. 345, 77 L.Ed. 730, 87 A.L.R. 1191; American Airways, Inc., v. Grosjean (D.C.) 3 F. Supp. 995, affirmed 290 U.S. 596, 54 S.Ct. 129, 78 L.Ed. 524; Edelman v. Boeing Air Transport, Inc., 289 U.S. 249, 53 S.Ct. 591, 77 L.Ed. 1155. The only use in the state to which plaintiff puts its gasoline is in propelling its busses, the gasoline being carried in tanks on the busses connected directly with the carburetors. As an excise tax on the privilege of use, the facts bring it squarely within the much-distinguished but still unreversed doctrine of Helson and Randolph v. Com. of Kentucky, 279 U.S. 245, 49 S.Ct. 279, 73 L.Ed. 683.

However, unlike the ferryboats in the Helson Case and the airplanes and railroad motors in the other cited cases, plaintiff does use the state-owned highways, and the state has ample power to exact a reasonable charge for that use even of purely interstate carriers. The right to carry on interstate commerce gives plaintiff no right to use state highways or park in the state house grounds as a garage, without paying a fair charge therefor. Clark v. Poor, 274 U.S. 554, 47 S.Ct. 702, 71 L.Ed. 1199; Carley & Hamilton, Inc., v. Snook, 281 U.S. 66, 50 S.Ct. 204, 74 L.Ed. 704, 68 A.L.R. 194; Interstate Busses Corporation v. Blodgett, 276 U.S. 245, 48 S.Ct. 230, 72 L.Ed. 551; Continental Baking Co. v. Woodring, 286 U.S. 352, 52 S.Ct. 595,

---

[1] We take note of the fact that occasionally gasoline was bought in the state and the tax paid thereon without contest. This case, save for the administrative provisions noticed later, is concerned only with gasoline used from tanks on the busses for propulsion.

76 L.Ed. 1155, 81 A.L.R. 1402. It is neither charged nor proven here that 5 cents a gallon is, together with the modest mileage charge laid by another statute, such an exorbitant charge as to be a tax disguised as compensation, nor that the method has no reasonable relation to the use made of the highways. We know that the heavier and faster the bus, the more damage it does to the highways and, in rough approximation, the more gasoline it uses. If the Legislature, by this statute, exacted compensation for the use of the highways, plaintiff must fail.

But unless the statute can fairly be construed as a charge for the use of state facilities rather than an excise tax on the privilege of interstate commerce, then plaintiff must prevail. Interstate Transit, Inc., v. Lindsey, 283 U.S. 183, 51 S.Ct. 380, 75 L.Ed. 953. Free to construe this statute a priori, the fact that the proceeds of the sales tax, and perhaps of the use tax, go exclusively to highway financing, would be most persuasive. Interstate Transit, Inc., v. Lindsey, supra. That a mileage tax is also imposed is not controlling. Interstate Busses Corporation v. Blodgett, supra. Practical considerations support such a construction, for these menacing mammoths of the highways ought to pay for the damage they do.

But we are not free. The New Mexico statute means what the New Mexico Supreme Court says it means. The predecessor of this statute, in language so nearly identical as to admit of no distinction, has been twice before the Supreme Court of New Mexico. In Breece Lumber Co. v. Mirabal, 34 N.M. 643, 287 P. 699, 84 A.L.R. 827, plaintiff was compelled to pay the tax on gasoline used in logging operations, none of which was used on the highways. The court specifically held it was a tax, as the statute says, and not compensation for the use of the highways. Later, an airplane company, not using the highways, was compelled to pay the sales tax, but not the use tax. Transcontinental & Western Air Co. v. Lujan, supra. In 1931 the Legislature exempted gasoline bought in large quantities and not used on the highways. This amendment was called to the attention of the Supreme Court on rehearing, in the last case; the claim being that the amendment disclosed a legislative intent to construe the statute as designed only for compensation for the use of the highways. But the Supreme Court said that the history of the statute warranted no such construction, adhered to its view that a tax was imposed and not compensation exacted, and the airplane company was required to pay the tax.

A decent respect for these opinions of the highest court of New Mexico seems to repel the conclusion that this statute exacts a charge for the use of highways but does not impose a tax. If it is a compensation statute, the airplane company should not have paid. It cannot be a tax for airplanes and a charge for busses. It is one or the other. True, it was the sales tax there involved, and not the use tax. But, where the statute imposes "an excise tax * * * upon the sale and use," it is hair splitting to say that "excise tax" means what it says with reference to "sale" and an entirely different thing with reference to "use" in the same breath.

Until the New Mexico statute is amended or the Supreme Court of New Mexico otherwise interprets it, the majority of the court defer to the decisions as they now exist. The presumption of constitutionality hardly justifies a federal court in refusing to follow state decisions construing state statutes.

That Texas rebates plaintiff taxes paid on gas purchased in Texas and used in New Mexico is a circumstance that bears on the rough justice of the situation, but it does not bear on the critical question of what the New Mexico Legislature intended when it enacted this statute some years before the rebate was granted by another sovereignty.

We adopt the stipulated facts as our findings; a decree enjoining the collection of the tax will be prepared and entered. Administrative provisions of the statute, incidentally attacked, seem appropriate to the enforcement of the statute. They do not require plaintiff to do business in New Mexico. The decree will not enjoin administrative provisions appropriate to enforce the mileage tax statute or the sales tax on such gasoline as plaintiff does buy in the state. If defendant appeals within thirty days of the entry of the decree, a stay will be granted to the end that the bond now in force shall remain in force pending the appeal, to protect the defendant in event the decree is reversed.

We are indebted to counsel for their intelligent co-operation in agreeing upon the facts and in expediting a decision, and for very helpful argument and briefs.

BRATTON, Circuit Judge (dissenting).

The crucial question presented for determination is whether the tax involved represents a reasonable and nondiscriminatory excise upon the privilege of using the public highways of New Mexico in the conduct of an interstate motorbus business or a levy upon the prerogative to engage in interstate commerce. If the former, it is valid; if the latter, it violates the commerce clause of the Constitution of the United States (article 1, § 8, cl. 3) and must fall.

A sketchy chronology of the legislation in New Mexico may be helpful. Chapter 93, Laws of 1919, imposed a tax of 2 cents per gallon on all gasoline sold or used within the state, and expressly provided that the proceeds derived therefrom, after payment of certain salaries and expenses, should be covered into the road fund to be used for the construction, improvement, and maintenance of the public highways. Chapter 175, Laws of 1921, levied a tax upon gasoline sold, but did not cover gasoline used, and it repealed the earlier act in toto. That act was amended by chapter 61, Laws of 1925, but it likewise did not include a tax on gasoline used. Chapter 20, Laws of 1927, being sections 60-203, 60-205, Comp.1929, dealt exclusively with sales, and did not concern itself with use. Chapter 14 of the same session laid a tax of 5 cents per gallon on gasoline used for the propulsion or operation of motorbusses, commercial cars, trucks, or other vehicles upon the highways. It was amended by chapter 29, Laws of 1929, being section 60-101, Comp. 1929, to extend the tax to gasoline used for any purpose. The amending act reads: "There is hereby levied and imposed an excise tax of five cents per gallon upon the use of all gasoline and motor fuel used in this state for any purpose; Provided, that in the collection of such tax a deduction shall be allowed of the amount of the excise tax paid in this state by distributors or dealers upon the sale of the gasoline so used."

Chapter 31, Laws of 1931, authorized a refund of the tax collected upon gasoline purchased in specified quantities and used exclusively for other purposes than the operation of motor vehicles upon the public streets or highways of the state. That act was amended in certain particulars by chapter 162, Laws of 1933, but the amendment has no significance here. It still authorizes a refund upon 100 or more gallons of gasoline if acquired by single purchases of 50 gallons or more and is used otherwise than in the operation of vehicles on the streets or highways. That act was approved March 15, 1933. Then followed chapter 176, Laws of 1933, approved the succeeding day. It defines a distributor, among others, as any person using or consuming gasoline within the state before it shall have been received by any other person there. Section 2 levies and imposes an excise tax of 5 cents per gallon upon the sale or use of gasoline sold or used within the state, except that sold in interstate commerce. Section 3 makes it unlawful for any distributor to use any motor fuel without procuring a license from the Comptroller. It further provides for the payment of a license fee of $25. Upon compliance with that section, a license is issued which entitles the licensee to transact business in the state. Section 4 provides for the filing of a bond conditioned upon payment of any tax which may fall due and the making and filing of certain required reports, the amount of the bond to be double the estimated amount of the tax due for one month. Section 13 provides that the tax shall be distributed as then or thereafter provided by law.

No argument is presented with respect to the application of the funds derived from the tax on the sale and that on the use of gasoline. All parties assume that the funds derived from both sources are applied, first, to the discharge of outstanding highway debentures and then to the construction, operation, and maintenance of public highways. The law has been uniformly administered in that manner, and it therefore is unnecessary to turn aside for the purpose of considering whether there is any distinction between the uses to which the two classes of revenue may be devoted.

Plaintiff asserts that the exaction of the tax in question casts an undue burden upon interstate commerce. Its chief reliance to sustain that contention is placed upon Helson v. Com. of Kentucky, 279 U.S. 245, 49 S.Ct. 279, 73 L.Ed. 683. There the state of Kentucky attempted to impose a tax upon gasoline used in the operation of a ferry on the Ohio river. The ferry was engaged solely in the transportation of passengers between the states of Il-

linois and Kentucky. All of the gasoline was purchased in Illinois; 75 per cent. of it was consumed in Kentucky; and the tax was asserted only on that part of it. The court held that the tax was a direct burden on interstate commerce, and therefore invalid. But that case is clearly distinguishable from this one. There no state facility was used in the operation of the business. Here, plaintiff uses and enjoys the public highways in the conduct of its business. They are constructed and maintained at great public expense. That heavy busses operated at high speed wear and tear highways, thus increasing the expense of upkeep and repair, is a recognized fact. It is now settled by repeated adjudications that a common carrier for hire, who uses the public highways in the conduct of its business, may be required to contribute to their cost and upkeep, although it is engaged exclusively in interstate commerce. If reasonable and nondiscriminatory, that contribution in the nature of compensation may be fixed upon the basis of an annual tax graduated according to the number and capacity of vehicles used, Clark v. Poor, 274 U.S. 554, 47 S.Ct. 702, 71 L.Ed. 1199; it may be fixed by mileage, Interstate Busses Corporation v. Blodgett, 276 U.S. 245, 48 S.Ct. 230, 72 L.Ed. 551; it may be upon a per gross ton mileage, Continental Baking Co. v. Woodring, 286 U.S. 352, 52 S.Ct. 595, 76 L.Ed. 1155, 81 A.L.R. 1402; or upon any other basis which sustains a direct relation to the wear and tear of the highways.

A careful analysis of the legislation in New Mexico indicates clearly that the tax now required, measured by the amount of gasoline used in the operation of motor vehicles upon the public highways, is in essence an excise in the nature of compensation for the privilege of using the highways. The earlier act laid the tax upon gasoline used for any purpose. It was not confined to that consumed upon the highways, and its validity was sustained. Breece Lbr. Co. v. Mirabal, 34 N.M. 643, 287 P. 699, 84 A.L.R. 827. But the Legislature in 1931, that is, at the next session following that decision, authorized refunds upon gasoline not used upon the highways. That chronology argues convincingly that the Legislature intended to meet the decision of the court and correct an undesired situation by converting the tax into one of compensation for the privilege of using the highways. When considered in connection with the fact that the proceeds, above the amount required for administration, were allocated to highway purposes, it amounted to a legislative declaration to that effect. The objective could have been reached in either of two methods; either the enactment of a completely new statute levying the tax only upon gasoline used in vehicles on the highways, or by allowing the existing law making the levy general to remain in force and enact a special statute authorizing refunds. The former method would have entailed manifest administrative difficulties with much evasion of taxes. The latter presented plain advantages in its administration with less escape of taxes. That method was employed, and it evinces a clear intent and purpose on the part of the Legislature to require compensation for the privilege of using the highways—not the privilege of engaging in business. The fact that all of the revenue derived, except that required for administration, is allocated to highway purposes, lends strong support to that conclusion. Clark v. Poor, supra; Interstate Transit, Inc., v. Lindsey, 283 U.S. 183, 51 S.Ct. 380, 75 L.Ed. 953; State v. Johnson, 173 La. 669, 138 So. 503.

Since the compensation thus required is measured by the quantity of gasoline consumed, it bears a direct and pertinent relation to the wear and tear of the highways, and the method of computing it is not arbitrary. On the contrary, it is reasonable and free from discrimination in method and amount.

Neither Breece Lbr. Co. v. Mirabal, supra, nor Transcontinental & Western Air, Inc., v. Lujan, 36 N.M. 64, 8 P.(2d) 103, announces a doctrine contrary to anything which has been said. The former merely held that chapter 29, Laws of 1929, imposed a tax upon all gasoline used within the state, and consequently applied to that consumed in the cutting, logging, and processing of timber. Manifestly, that was correct. The statute under consideration levied the tax upon all gasoline used without exception, exclusion, or limitation, and its validity was sustained as an excise. That is the scope of that decision. The court held in the latter case that the tax upon gasoline purchased outside the state, but consumed within its boundaries in the operation of airplanes engaged in interstate commerce, could not be sustained because it constituted an excise upon the use of an

instrumentality of interstate commerce. But there the planes did not use the highways. No use of a state facility was involved. The tax was wholly foreign to the cost and upkeep of the highways. It could find no other basis than impingement upon the use of an instrumentality in interstate commerce. The act of 1931 authorizing refunds was called to the attention of the court on rehearing in that case. But the tax involved there had accrued before that statute became effective. That fact is plain from the statement in the opinion making disposition of the motion that the statute went into effect after the suit was filed. The contention advanced was that by the refunding statute the Legislature of 1931 attempted to construe the act of 1929 in such manner that its provisions did not apply to gasoline sold for use in interstate aircraft. The court responded with the statement that the history of gasoline tax legislation did not warrant that construction. The accuracy of that statement is evident. The Legislature in 1927 passed an act levying the tax only upon gasoline used for operating vehicles on the highways. That act was amended at the next session to extend its application to all gasoline used in any manner. The amended statute quoted above was in force at the time the tax involved in the suit accrued. Manifestly, the act passed in 1931 providing for refunds could not reflect a legislative intent in 1929 to apply the tax only to gasoline used on the highways when the statute of 1929 itself provided otherwise. That was the sole purpose of that amendment. The substance of the argument was that the Legislature of 1929 intended one thing when it provided the opposite in clear and unmistakable language. Rejection of the contention occasions no surprise. But here we deal with the situation after 1931. That the Legislature did not intend for the act of 1931 to serve retroactively by exempting gasoline theretofore used otherwise than on the highways is beside the question. The pertinent inquiry is, what prospective change did the act of 1931 effect? The language contained in the opinion on rehearing in that case has no bearing upon the problem with which we are confronted. Moreover, the statute of 1931 did not attempt to exempt any gasoline used from the payment of the tax at the time of its purchase. It merely authorized refunds in certain circumstances. That presupposes payment of the tax rather than its exemption as there contended by the taxpayer.

Of course, this court maintains a becoming respect for the decisions of the Supreme Court of the state. Its construction of the Constitution and statutes of the state are binding upon this court. But that court has never held that the tax now authorized, measured by the quantity of gasoline consumed in the operation of motor vehicles on the highways, is an excise upon the privilege of engaging in business. When it has construed the statute in that manner, we should hold that the state is powerless to exact the tax from a company engaged exclusively in interstate commerce because it would violate the commerce clause of the Federal Constitution, but until then plaintiff should be required to pay it as reasonable and nondiscriminatory compensation for the privilege of using the public highways of the state. For these reasons I dissent.