**BUXBOM v. CITY OF RIVERSIDE et al.**

No. 494–Y.

District Court, S. D. California.
Central Division.

Sept. 23, 1939.

A. L. Wirin and Leo Gallagher, both of Los Angeles, Cal., for plaintiff.

Eugene Best, City Atty., of Riverside, Cal., for defendants.

YANKWICH, District Judge.

The Complaint seeks to enjoin the enforcement of a city ordinance. The plaintiff asks for an injunction pending suit. The defendants have moved to dismiss.

Involved in this proceeding is the validity of an ordinance of the City of Riverside, California, regulating handbills. It was adopted recently, after an injunction had been granted by me against the enforcement of a prior ordinance on the ground of unconstitutionality.

■ As the subject has been clarified lately by several decisions, especially, Lovell v. Griffin, 1938, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949; and Hague v. C. I. O., 1939, 3 Cir., 101 F.2d 774 and Hague v. C. I. O., 1939, 59 S.Ct. 954, 83 L.Ed. 1423; 59 Supreme Court Reporter 454, we may well start by setting down, generally, certain of the constitutional norms which these decisions establish. The constitutional guarantee of free speech and free press, U.S.Constitution, Amendment 1, U.S.C.A. is not an injunction against the states or their subdivisions. Permoli v. Municipality No. 1 of New Orleans, 1845, 3 How. 589, 609, 11 L.Ed. 739; State of Ohio ex rel. Lloyd v. Dollison, 1904, 194 U.S. 445, 24 S.Ct. 703, 48 L.Ed. 1062.

■ Nevertheless, the Supreme Court has, in recent years, placed the guarantee of a free press and free speech under the protective shield of the due process clause of the Fourteenth Amendment. Whitney v. California, 1927, 274 U.S. 357, 47 S.Ct. 641, 71 L.Ed. 1095; Stromberg v. California, 1931, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117, 73 A.L.R. 1484; Near v. Minnesota ex rel. Olson, 1931, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 357; Grosjean v. American Press Company, Inc., 1936, 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660; De Jonge v. Oregon, 1937, 299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278; Lovell v. City of Griffin, 1938, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949.

■ Back of these decisions is the fact that the right of free expression, beginning with the struggle in the Long Parliament in England against licensed printing (against which Milton directed his famous "Areopagitica") when it was considered merely as freedom from previous restraint (see Patterson v. Colorado, 1907, 205 U.S. 454, 27 S.Ct. 556, 51 L.Ed. 879, 10 Ann. Cas. 689) became, under later constitutional developments in the United States, a substantive right free from invasion by governmental agencies. Schenck v. United States, 1919, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470, and cases supra.

■ Notwithstanding the primacy of this right, in its application, recognition has been given to the exercise of governmental functions which may result, not in absolute prohibition of its exercise, but in limitations as to manner or time or place of exercise. See, note, Freedom of The Press, 1939, 12 So.Cal.Law Rev. 466. Free distribution and circulation are a part of the freedom of the press. Lovell v. Griffin, supra; Grosjean v. American Press Co., Inc., supra. And see my opinion in People v. Armentrout, 1931, 118 Cal.App. Supp. 761, 1 P.2d 556.

So far as material to the discussion to follow, the boundaries of control of advertising or pamphlets are stated very clearly in Lovell v. City of Griffin, supra, 303 U.S. at page 451, 58 S.Ct. at page 668, 82 L.Ed. 949:

"The ordinance is not limited to 'literature' that is obscene or offensive to public morals or that advocates unlawful conduct. There is no suggestion that the pamphlet and magazine distributed in the instant case were of that character. The ordinance embraces 'literature' in the widest sense. The ordinance is comprehensive with respect to the method of distribution. It covers every sort of circulation 'either by hand or otherwise.' *There is thus no restriction in its application with respect to time or place. It is not limited to ways which might be regarded as inconsistent with the maintenance of public order, or as involving disorderly conduct, the molestation of the inhabitants, or the misuse or littering of the streets.* The ordinance prohibits the distribution of literature of any kind at any time, at any place, and in any manner without a permit from the city manager.

"We think that the ordinance is invalid on its face. Whatever the motive which

induced its adoption, its character is such that it strikes at the very foundation of the freedom of the press by subjecting it to license and censorship. The struggle for the freedom of the press was primarily directed against the power of the licensor. It was against that power that John Milton directed his assault by his 'Appeal for the Liberty of Unlicensed Printing.' And the liberty of the press became initially a right to publish 'without a license what formerly could be published only with one.' While this freedom from previous restraint upon publication cannot be regarded as exhausting the guaranty of liberty, the prevention of that restraint was a leading purpose in the adoption of the constitutional provision. See Patterson v. Colorado, 205 U.S. 454, 462, 27 S.Ct. 556, 51 L.Ed. 879, 10 Ann.Cas. 689; Near v. State of Minnesota ex rel. Olson, 283 U.S. 697, 713–716, 51 S.Ct. 625, 630, 75 L.Ed. 1357; Grosjean v. American Press Co., 297 U.S. 233, 245, 246, 56 S.Ct. 444, 447, 80 L.Ed. 660. Legislation of the type of the ordinance in question would restore the system of license and censorship in its baldest form." (Italics added.)

■ *Limitations on the time and place of distribution and prohibitions aiming to prevent the annoyance of citizens and the misuse or cluttering of public streets, are thus given unequivocal judicial sanction.*

■ By the tests so laid down, the ordinance under discussion is not vulnerable. Its full text is given in the margin.[1] By allowing the handing of handbills and ad-

---

[1] "Ordinance No. 860 (New Series) An Ordinance of the City of Riverside, California, declaring the practice of distributing handbills and advertising matter in certain places and in certain ways to constitute a public nuisance and prohibiting the same: repealing ordinances in conflict herewith and providing for violations thereof.

"Whereas, it has come to the attention of the Mayor and Council of the City of Riverside, that the profuse and promiscuous circulation of handbills, circulars, newspapers, dodgers and other forms of advertising matter, without regulation, in the streets of said City, and on the premises, porches, drives, sidewalks, and in the yards of the residents of the City of Riverside, and in vehicles standing in the public streets, results in the blowing of such matter in the streets, alleys and other public places in said City, and has become a public nuisance by the littering of the streets, alleys and other public places, and thereby causing an unsightly condition, as well as a menace to the public peace, health and safety by the risk of fires, of clogging storm drains, and of apprising prowlers and criminals of the absence of residents from their homes, and generally annoying and disturbing the general public; and

"Whereas, the safety, comfort and welfare of the citizens and residents of the City of Riverside, and of the public in general, demand that this condition be remedied:

"Now, therefore, the Mayor and Council of the City of Riverside do ordain as follows:

"Section 1: The practice of throwing, casting, distributing, scattering and depositing handbills, dodgers, circulars, newspapers, booklets, posters, printed matter, advertising literature, advertising samples and devices, upon public and private property in the City of Riverside, without regulation, is hereby declared to constitute a public nuisance.

"Section 2: It shall be unlawful for any person, firm or corporation to throw, cast, distribute, scatter, deposit or place, upon any public place within the City of Riverside, including streets, alleys, public parks and school grounds, any handbill, dodger, circular, newspaper, paper, booklet, poster, or any other printed matter or literature, except that the same may be personally delivered to those who are willing to accept the same.

"Section 3: It shall be unlawful for any person, firm or corporation to throw, cast, distribute, scatter, deposit and place upon any public place within the City of Riverside, including streets, alleys, public parks and school grounds, any advertising literature of any kind, or any advertising sample or device, except that the same may be personally delivered to those who are willing to accept the same.

"Section 4: It shall be unlawful for any person, firm or corporation to throw, distribute or place in any automobile, or other vehicle, in the City of Riverside without having first obtained permission of the owner, or person in possession thereof, any handbill, dodger, circular, newspaper, paper, booklet, poster, printed matter, advertising literature, advertising samples and devices.

"Section 5: It shall be unlawful for any person, firm or corporation to throw, cast, distribute, deposit, scatter, pass out, give away, circulate or deliver, any handbill, dodger, circular, newspaper, paper, booklet, poster, or any other printed matter or literature, in the yard or grounds of any house, building, structure, or on any

vertising matter on the streets to passers-by and the delivery of the same personally "to those who are willing to accept" them, by specifically permitting the street sale of newspapers and their delivery to subscribers or "to any person who has requested the delivery of the same", the ordinance, in effect, permits distribution without limit in all public and private places of all literature, pamphlets, dodgers, handbills and advertising matter. The ordinance does prohibit the placing of handbills or advertising matter (we use these two expressions to designate all kinds of printed matter without repeating the enumeration of the ordinance) on the streets, in parks, in private automobiles, in the yards or grounds of any house, building, structure or on any porch or door step or vestibule "or in any public hall way thereof" or upon any vacant lot or other private property "without having first obtained the permission of the owner, or of an adult resident or occupant thereof".

The plaintiff is charged with the violation of Section 6 of the ordinance, by throwing certain advertising literature on the grounds of a private residence in the City of Riverside, without first obtaining the permission of the owner.

I cannot see how this ordinance, and especially the provisions in sections 4, 5, and 6, requiring permission of the owner of property before putting handbills or advertising on it, can be said to violate the right of a free press.

Freedom of the press is a part of that freedom of expression which includes free speech.

The right to speak freely *does not imply* the right to force one's speech on another's private premises.

As I stated at the trial, no constitutional principle gives one the right to stand on my front lawn and deliver a speech to whomever may listen. Pragmatic American speech disposes of any such claim by the familiar expression "go and hire a hall". This is also sound constitutional doctrine.

In like manner, the right to distribute

---

porch or door step or vestibule, or in any public hallway thereof, or upon any vacant lot, or other private property, without having first obtained permission of the owner, or of an adult resident or occupant thereof.

"Section 6: It shall be unlawful for any person, firm or corporation to throw, cast, distribute, deposit, scatter, pass out, give away, circulate or deliver, any advertising literature of any kind, or any advertising sample or device, in the yard or grounds of any house, building, structure, or on any porch or doorstep, or vestibule, or in any public hallway thereof, or upon any vacant lot, or other private property, without having first obtained permission of the owner, or of an adult resident or occupant thereof.

"Section 7: This ordinance shall not be deemed to prohibit the distribution of United States Mail, nor the delivery of any newspaper to any subscriber therefor, or to any person who has requested the delivery of the same, nor to the sale of separate copies thereof.

"The term 'Newspaper' as herein used, shall be construed to mean a newspaper of general circulation as the same is defined in Sections 4460 and 4463 of the Political Code of the State of California.

"Section 8: It shall be lawful for the owner or occupant of any property to place a sign in a conspicuous place near the front door thereof, to the effect that it is not desired that any literature, adver-tising sample or device, be delivered to said property; and it shall be unlawful to deliver any literature or advertising sample or device thereof.

"Section 9: If any section, sub-section, sentence, clause or phrase of this ordinance is for any reason held to be invalid or unconstitutional, such decision shall not affect the validity of the remaining portions of the ordinance. The Mayor and Council of the City of Riverside hereby declare that they would have passed this ordinance, and each section, sub-section, sentence, clause and phrase thereof, irrespective of the fact that any one or more other sections, subsections, sentences, clauses or phrases be declared invalid or unconstitutional.

"Section 10: Ordinance No. 838 (New Series) and all other ordinances, or parts of ordinances, in conflict herewith, are hereby repealed.

"Section 11: Any person, firm or corporation violating any of the provisions of this ordinance, shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not more than Three Hundred ($300.00) Dollars, or by imprisonment in the City Jail for not exceeding three (3) months, or by both such fine and imprisonment.

"Section 12: The City Clerk shall certify to the adoption of this ordinance and shall cause the same to be posted on the bulletin board of the City Hall in said City."

literature and pamphlets does not imply the right to "force" acceptance by placing them on another person's premises without his permission.

■ Governmental agencies may protect a property owner in the enjoyment of his property. They may ward off those who would annoy him, by trespassing on it in one way or another. These are verités à la Palisse. See note, Freedom of the Press, 1939, 12 So. Cal.Law Rev. 466.

■ If, as claimed by the petitioner, this curtails the right of the occupant of property to receive literature, and advertising, the answer is twofold. The plaintiff, not being in that position, cannot complain of the invasion of rights which do not affect him.

More, the occupant of premises may have the full benefit of limitless distribution by indicating his consent directly to a particular distributor, or, generally, by placing upon his premises a sign indicating that "all distribution is welcome".

There is no more inconvenience in this than in the customary, "No solicitors or peddlers" signs by which persons shield their privacy.

■ Nor is any constitutional norm violated when he who would spread literature or advertising on private premises is compelled to obtain the owner's consent. A man's home is still his castle.

If, to paraphrase Chatham, the King is not free to enter the humblest cottage without being guilty of trespass, what "Divinity doth hedge" the purveyor of handbills that he should be free to enter?

If, by the common law of England, the humblest cotter, to quote Chatham, "may bid defiance to all the forces of the crown", and a similar right is guaranteed by the Fourth Amendment to the Constitution of the United States, whence the right of the dispenser of printed matter to immunity from this?

If governmental agencies may aid the enjoyment of people's homes by zoning ordinances (Euclid, Ohio, v. Ambler Realty Co., 1926, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016) ; if the erection of bill boards may be made dependent upon consent of owners of property in the neighborhood (Cusack Co. v. Chicago, 1917, 242 U.S. 526, 37 S.Ct. 190, 61 L.Ed. 472, L.R.A.1918A, 136, Ann.Cas.1917C, 594 ; St. Louis Poster Adv. Co. v. St. Louis, 1919, 249 U.S. 269, 39 S.Ct. 274, 63 L.Ed. 599) ; and even solicitation of custom or patronage in railroad stations or on public streets in front of them may be prohibited (In re Barmore, 1917, 174 Cal. 286, 163 P. 50, L.R.A.1917D, 688) or be made dependent upon consent of the railroad or abutting owner (Ex parte Statham, 1920, 45 Cal.App. 436, 187 P. 986), it is incomprehensible how the right to print and distribute freely may be broadened into absolute freedom to invade another's property rights by littering his premises without his consent.

Yet that is exactly what the plaintiff here claims. He engages in the business of distributing advertising or other leaflets for hire. Under the claim of freedom of the press, he would have us confer upon him the right to invade the property of others, in the conduct of his business.

This would call for an extension of the right of a free press which is not sanctioned by precedent or by any historical considerations. San Francisco Shopping News Co. v. City of South San Francisco, 1934, 9 Cir., 69 F.2d 879; People v. St. John, 1930, 108 Cal.App.Supp. 779, 288 P. 53; Sieroty v. City of Huntington Park, 1931, 111 Cal.App. 377, 295 P. 564.[2]

---

[2] ■ There is no substance to the contention that "distribution" in the broad sense of "handing out" is forbidden. The clauses, dependent on consent, contain many verbs. "Distribute" is among them. They are all modified by the requirement of consent at the end of each section. (See especially sections 4, 5, and 6). And the ordinance specifically permits the only distribution which is protected, the handing out of all kinds of literature and advertising to persons who wish to receive them. The criminal complaint pending against the plaintiff charges that he "did wilfully and unlawfully *throw and distribute* certain advertising literature, to-wit: On the property located at 3759 Briscoe Street, 3728 Briscoe Street, 3761 Briscoe Street, 3707 Briscoe Street, and 3720 Briscoe Street, contrary to the provisions of Section 6 of Ordinance No. 860 N.S. of the City of Riverside in such case made and provided, and against the peace and dignity of the State of California."

Under these allegations, he can be convicted only upon proof that he "threw" a handbill illegally on the property. If he merely "handed" a handbill to some one on the property who was willing to receive it, he would not be guilty of any violation.

There is no merit to the contention of the plaintiff that he is entitled to protection against discrimination in the enforcement of the ordinance, because others are not prosecuted. The Complaint alleges: "Certain advertising sheet known as 'The Riverside News Advertiser', has been distributed widely and publicly to residents of the City of Riverside weekly, without compliance with the requirements of said Ordinance; and the defendant officials of the City of Riverside have known of such distribution without such compliance, and have knowingly and wilfully refused and failed to prosecute the distributers of said sheet for a violation of said Ordinance."

While partiality in prosecution is destructive of that equality which is the pride of our rule of law, courts cannot enjoin a valid prosecution merely because others guilty of the same offense are not being prosecuted.[3] Nor is, ordinarily, a federal question involved in such matter. Were it otherwise, every case wherein it was contended that certain persons were being prosecuted and others were not, could be turned into a federal constitutional question and the power of this court invoked.

Counsel, in support of their contention that failure to prosecute others engaged in similar violations is ground for our intervention on constitutional grounds, suggest an analogy from such cases as Yick Wo v. Hopkins, 1886, 118 U.S. 356, 6 S. Ct. 1064, 30 L.Ed. 220, and Hague v. C. I. O., supra. The analogy does not hold.

Involved in those cases were regulatory ordinances which forbade the doing of certain things *except by permission of certain municipal officers.*

In granting permission, the officers were shown to have discriminated against certain groups. In the Yick Wo case, the discrimination was against certain laundries occupied by Chinese. In the Hague case, the discrimination was against certain groups whose heterodox doctrines the public officials did not approve and to whom they denied the right of free assemblage, while granting it to others (see opinion of Mr. Justice Roberts). The acts in each case were denounced as violations of due process, as they involved the granting to favored persons of what was denied to others not in favor.

The ordinance here is not regulatory. It is a criminal, prohibitory ordinance. It *does not call for* the issuance of permits by the city authorities.

The only assents which legalize acts otherwise illegal are those from owners or occupants of private property or premises. It is not within the power of the city authorities to grant, withhold or approve them. They do not act on violations, thru failure to obtain an assent, except on complaint of others. Their failure to act— even if due to deliberate choice, while, if true, amounting to mal-administration— does not rise to the dignity of unconstitutional discrimination or of that lawless enforcement against which the Fourteenth Amendment is a shield.[4]

We conclude that the Complaint does

---

[3] In justice to the officials of Riverside, it should be stated that the City Attorney, appearing at the hearing, offered to issue a complaint against any alleged violator if plaintiff or anyone else would swear to it.

[4] In reaching this conclusion, we have not overlooked such cases as Ah Sin v. Wittman, 1905, 198 U.S. 500, 25 S.Ct. 756, 49 L.Ed. 1142; Home Telephone & Telegraph Co. v. City of Los Angeles, 1913, 227 U.S. 278, 33 S.Ct. 312, 57 L. Ed. 510; Mackay Telegraph & Cable Co. v. City of Little Rock, 1919, 250 U.S. 94, 39 S.Ct. 428, 63 L.Ed. 863. The last two cases dealt with tax ordinances. The Ah Sin case concerned an anti-gambling ordinance. But all these stress the fact that mere failure to prosecute others is not a basis for federal intervention on the ground of denial of due process. See Saunders v. Lowry, 1932, 5 Cir., 58 F.2d 158.

What is necessary is thus stated in Mackay Telegraph & Cable Co. v. City of Little Rock, supra, 250 U.S. at page 100, 39 S.Ct. at page 430, 63 L.Ed. 863: "The offer of testimony to prove that the two other companies were not in fact required to pay the tax upon so many of their poles as stood upon railroad rights of way went no further than to show that the general ordinance had not been enforced against them in the same manner that it was proposed to enforce the franchise ordinance against plaintiff in error. *There was no offer to show an arbitrary and intentionally unfair discrimination in the administration of the ordinance as in* Yick Wo v. Hopkins, 118 U.S. 356, 374, 6 S.Ct. 1064, 30 L.Ed. 220." (Italics added.) Other than bare recital of failure to prosecute others, the complaint here contains no such allegations.

not state a claim upon which relief can be granted.

The motion to dismiss is, therefore, granted. The Order to Show Cause is discharged and the temporary restraining order dissolved.

The Court requests that the city authorities do not press the prosecution against the plaintiff until the final disposition of this matter. Should they decline to do so, plaintiff may apply for a new restraining order, upon filing an amended complaint, if so advised.

Formal order to follow.