CHASE MANHATTAN BANK (NATIONAL ASSOCIATION), a National Banking Association, as Trustee, et al., Plaintiffs in Error,

v.

John F. CANTRELL, County Treasurer of Tulsa County, Oklahoma, Defendant in Error.

No. 43782.

Supreme Court of Oklahoma.

Jan. 25, 1972.

Robert A. Huffman, John L. Arington, Jr., Charles B. Dunn, Huffman, Arrington, Scheurich & Kincaid, Tulsa, for plaintiffs in error.

S. M. Fallis, Jr., Dist. Atty., Andrew B. Allen, Asst. Dist. Atty., Tulsa, for defendant in error.

DAVISON, Vice Chief Justice.

This is an appeal from a judgment of the District Court of Tulsa County, Oklahoma, sustaining a general demurrer of the defendant, the Treasurer of Tulsa County, Oklahoma, John F. Cantrell, to the petition, as amended, of plaintiffs, Chase Manhattan Bank, a National Banking Association, As Trustee, and others. The plaintiffs, other than Chase Manhattan Bank, are the purchasers of bonds issued by Oklahoma Natural Gas Company under the Eleventh Supplemental Indenture dated September 1, 1968, in the aggregate princi-

pal amount of $10,000,000, authorized, executed and delivered by Oklahoma Natural Gas Company, hereinafter sometimes called the Company. This supplemental indenture was executed pursuant to the Original Indenture of Mortgage dated February 1, 1944, authorized, executed and delivered by Oklahoma Natural Gas Company to the Chase National Bank of the City of New York, as Trustee, to secure a maximum principal amount of bonds not to exceed $100,000,000 at any one time outstanding. The Chase Manhattan Bank is the corporate successor to Chase National Bank. Plaintiffs' action is for the recovery of $10,000.00 alleged to have been illegally exacted as a real estate mortgage tax plaintiffs paid under protest to the Treasurer of Tulsa County on the Eleventh Supplemental Indenture. Reference to the parties will be made by their trial court designations.

Including the facts hereinabove set forth, the petition, as amended, alleged in substance that the original indenture of February 1, 1944, as well as the supplemental indenture, established a mortgage lien upon substantially all of the properties, real, personal and mixed, and franchises then owned or thereafter acquired by Oklahoma Natural Gas Company, a public service corporation within the meaning of 68 O.S.1961, § 2442 (Supp.1968). The petition, as amended, alleged further that subsequent to the issuance of $10,000,000 aggregate principal amount of bonds under its Tenth Supplemental Indenture of May 1, 1965, the Company had made additional capital investments in facilities subject to ad valorem taxation in the amount of $25,096,367 through the end of its fiscal year ended August 31, 1968; that under the terms of the original indenture bonds could be issued against $10,260,639 of this additional capital investment as of August 31, 1968, and the bonds issued under the Eleventh Supplemental Indenture dated as of September 1, 1968, were issued against and are secured by such property.

The petition, as amended, alleged also that the Company's outstanding bank loans

had increased by $15,000,000 between August 31, 1965, and August 31, 1968, primarily as the result of continually increasing capital investment in facilities subject to ad valorem taxation and the funds derived from the sale of $10,000,000 aggregate principal amount of bonds secured by the Eleventh Supplemental Indenture have been and will be used to retire $10,000,000 in the aggregate, of the short term bank loans; that the short term bank loans made by the Company were not secured by any form of mortgage against the Company's property.

The petition further alleges that two electric utilities in Oklahoma, Public Service Company of Oklahoma, and Oklahoma, Gas and Electric Company, who employ the same method of financing with bonds as Oklahoma Natural Gas Company by using the bond money to satisfy previously incurred short term indebtedness used to construct new properties subject to ad valorem taxation are not required by the County Treasurer of Tulsa County to pay a real estate mortgage tax and that to require plaintiffs to pay such tax, under such facts and other facts alleged in plaintiffs' petition, as amended, violates the constitutional rights of plaintiffs under Article X, § 5, of the Oklahoma Constitution and the Fourteenth Amendment to the Constitution of the United States.

The Secretary of State refused to record and file the Eleventh Supplemental Indenture until either a real estate mortgage tax in the amount of $10,000.00 was paid or a County Treasurer determined that such tax was not payable. The County Treasurer refused to make a determination that such tax was not payable and the bond purchasers then concurrently paid the real estate mortgage tax through plaintiff, the Chase Manhattan Bank, as Trustee, to the Treasurer of Tulsa County, Oklahoma, in the amount of $10,000.00. Notice of intention to file suit to recover real estate mortgage tax payment was properly and timely given.

To determine whether the judgment of the trial court is correct, we must determine the meaning, as applied to Oklahoma Natural Gas Company, of the following proviso appearing as the last sentence in 68 O.S.1961, § 1908 (1968 Supp.):

"* * * Provided, however, that where a mortgage, or deed of trust, is executed to secure the payment of bonds issued by any domestic railroad, transportation, transmission or industrial corporation and the money derived from the sale of said bonds so secured by said mortgage, or deed of trust, is to be used for the creation, construction, building, improving and erecting of property that will be subject to an ad valorem tax in the county where same is situated, there shall be paid a recording fee on said mortgage, or deed of trust, so executed for recording said mortgage, or deed of trust, the sum of twenty-five cents for first folio and ten cents for each additional folio and fifty cents for indexing and recorder's certificate instead of the fees designated in this Article, and on payment of same shall not be subject to the penalties prescribed in this Article."

Under the quoted proviso, should the defendant have ruled that plaintiffs, as the holders of bonds issued by the Company and secured by a mortgage on the Company's real property, are required to pay only the recording fee prescribed in the proviso and are not required to pay a larger tax for recording their real property mortgages, prescribed by 68 O.S.1961, § 1904 (1968)? The defendant, the Tulsa County Treasurer, ruled in effect that plaintiffs are required to pay the larger tax prescribed by § 1904. The larger tax paid by plaintiffs under protest is being held by defendant separate and apart from all other taxes collected by him until a final determination of the question is made.

Plaintiffs qualify for the smaller fee prescribed in the proviso if under the facts, as alleged, it is legally correct to say (1) the Company's mortgage or deed of trust was "executed to secure the payment

of bonds issued by any * * * railroad, transportation, transmission or industrial corporation;" (2) "the money derived from the sale of bonds so secured by said mortgage, or deed of trust, *is to be used* for the creation, construction, building, improving and erecting of property that will be subject to an ad valorem tax in the county where same is situated." (emphasis supplied)

Plaintiffs contend in the alternative that the company, being a public utility corporation engaged in the purchase and sale of natural gas throughout the State of Oklahoma, is either a transportation, or a transmission or an industrial corporation. Plaintiffs contend further that if the company is not included within any of such classifications that to exclude it denies to it (1) the uniformity of treatment accorded by Article X, § 5, of the Oklahoma Constitution; (2) the equal protection of the laws guaranteed to it by the 14th Amendment to the Constitution of the United States.

In view of our conclusions as to a proper disposition of plaintiffs' appeal, we shall assume without deciding that the company is either a transportation, transmission or industrial corporation. This assumption renders academic the constitutional questions enumerated above as applied to the corporate classifications.

We now turn to the meaning of the following language in the proviso appearing at the end of 68 O.S.1961, § 1908 (Supp. 1968): "* * * the money derived from the sale of said bonds * * * *is to be used* for the creation, construction, building, improving and erecting of property that will be subject to an ad valorem tax in the county where same is situated." (emphasis supplied) Plaintiffs contend that the money from the sale of bonds issued under the Eleventh Supplemental Indenture was "to be used in the creation, constructing, building, improving and erecting of property" that had already been erected from funds derived from short term bank loans over a three year period

from August 31, 1965, to August 31, 1968. Defendant contends that under the allegations of the petition, as amended, the money was to be used and was used in paying the bank loans that had accumulated over the three year period. It is clear from the allegations of the petition of plaintiffs, as amended, that the money derived from the sale of bonds was used to pay the bank loans. Plaintiff contends it can also be said under the applicable language of the proviso that this same money was to be used and was used in the creation, erection and construction of the property for which the bank loans were used.

Plaintiffs say this because they allege (1) the company made capital investments in the amount of $25,096,367 through the end of its fiscal year ended August 31, 1968, subsequent to the issuance of $10,000,000 in bonds under its Tenth Supplemental Indenture dated as of May, 1965; (2) the $10,000,000 in bonds issued under the Eleventh Supplemental Indenture dated as of September 1, 1968, were issued against and are secured by prior capital investments made subsequent to May 1, 1965, to the extent of $10,260,639; (3) as of August 31, 1968, the Company's outstanding loans had increased by $15,500,000 since August 31, 1965; (4) the $10,000,000 derived from the sale of bonds under the Eleventh Supplemental Indenture have been and will be used to permit the retirement of $10,000,000 short term bank loans; (5) money from the Company's general operating funds in an amount substantially greater than the $10,000,000 derived from the bonds secured by the Eleventh Supplemental Indenture have been invested between August 31, 1965, and ending August 31, 1968 in capital improvements; (6) over $11,000,000 will be so invested in the Company's fiscal year ended August 31, 1969.

■ We conclude that the relevant language of the proviso: "* * * the money derived from the sale of said bonds * * * is to be used for the creation, construction, building, improving and erecting of property that will be subject to

ad valorem tax in the county where the same is situated" was not given the expansive meaning by the Fourth Legislature in the year 1913, that the plaintiffs seek to give it. 25 O.S.1961, § 1, provides: "Words used in any statute are to be understood in their ordinary sense, except when a contrary intention plainly appears and except also that the words hereinafter explained are to be understood as thus explained." The words "money * * * to be used" are not "hereinafter explained" in Title 25 nor does a contrary intention plainly appear, or appear at all for that matter, in the language of the proviso.

At page 29 of plaintiffs' brief, plaintiffs lapse into the ordinary sense of the word "use." They say: "What difference can it make with reference to this statutory purpose whether the specific bond sale funds are used to actually construct the taxable property or such funds *are used* to pay off short term loans which supplied the interim financing for the construction of the property, especially when the corporation in question has in fact invested substantially more funds in 'new' taxable property than the amount of the bonds?" The difference it makes is in the ordinary meaning of "is to be used." Certainly it cannot be said that bond money to be acquired in the future "is to be used" in the construction of property that already has been erected in the past by the use of money from other sources.

Where required we have always adhered to the ordinary sense of the word "use." In Board of Equalization of Carter County v. Carter Oil Company, 152 Okl. 99, 3 P.2d 816 (1931) we held, in construing the "Gross Revenue Law" C.O.S.1921, § 9814, that employees' lease houses and leasee's warehouse and material housed therein were not covered by the statutory language "equipment used in and around any well" or "actually used in the operation of such well or mine."

In William M. Graham Oil and Gas Co. v. Oil Well Supply Co., 128 Okl. 201, 264 P. 591, 598 (1927), we construed the word "use" in its ordinary sense as it appeared in C.O.S.1921, § 7464, in the following context: "* * * performs labor for or furnishes leases with materials * * * used in the digging, drilling * * * repairing of oil and gas wells * * *." An attempt was made to assert a lien for innumerable items, including supplies such as repairs for movable personal property, repair parts for trucks, bit gauge, manilla cable, drilling tools and the like. We held that such items in the ordinary sense could not be said to be "used" as indicated above in Section 7464. We there said: "The term 'used' in its common meaning and acceptance, according to lexicons, means the employment of a thing for a particular purpose.

In the case before us the use of the bond money was for the particular purpose of paying the bank loans. See also Home-Stake Production Co. v. Board of Equalization, Okl., 416 P.2d 917 (1966). This case held additionally: "* * * no claim of tax exemption can be sustained unless it is shown same clearly comes within the provision of the law under which the exemption is claimed." The property involved in the case before us would be subject to ad valorem taxation except for the provisions of 68 O.S.1961, § 1901 et seq. Here plaintiffs claim an exemption to an exemption from ad valorem taxation. The title to this act is in part "An Act providing for exemption from ad valorem tax of mortgages on real estate * * *." In paragraph 12 of the amended petition of plaintiffs, reference is made to "the exemption from the real estate mortgage tax." The exemption is an exemption from property taxation.

Plaintiffs also say in their brief: "When this statute [68 O.S.1961, § 1901, et seq.] was originally passed in 1913, the customary business practice was to finance business projects prospectively." Plaintiffs are saying that money derived from the sale of bonds according to the customary practice in 1913 was "to be used" in the actual construction of buildings that will be

subject to ad valorem taxation and not for the payment of bank loans "to be used" for that purpose. This assumption calls for the application of the rule of statutory interpretation invoked by us in Atlantic Refining Company v. Oklahoma Tax Com'n, Okl., 360 P.2d 826, 830, 831 (1959), wherein we were called upon to interpret the term "gross value" that was not defined in the act. In stating our problem in ascertaining the meaning of "gross value" when the legislature used it in 1916 we made application of the following, quoting from 50 Am.Jur., § 236, p. 224: "* * * Since, in determining the meaning of the terms of a statute, the aim is to discover the connotation which the Legislature attached to the words, phrases and clauses employed, the words of a statute must be taken in the sense in which they were understood at the time when the statute was enacted and the statute must be construed as it was intended to be understood when it was passed."

Plaintiffs urge next that their rights protected by the following provision of Art. X, § 5, of the Oklahoma Constitution are violated: "Taxes shall be uniform upon the same class of subjects." They plead as paragraph 13 of their amended petition that two electric utilities, Public Service Company of Oklahoma, whose home office is in Tulsa County, Oklahoma, and Oklahoma Gas and Electric Company, whose home office is in Oklahoma County, Oklahoma, employ the same method of financing with bonds as Oklahoma Natural Gas Company. Nevertheless, plaintiffs say, these utilities are not required to pay the real estate mortgage tax. The inference is left that they are permitted to pay the lower registration fees, although the electric utilities use the proceeds from bonds to satisfy previously incurred short term indebtedness that was used to construct new properties subject to ad valorem taxation.

In Trustees', Executors' & Securities Ins. Corp., Ltd. et al. v. Hooten, 53 Okl. 530, 157 P. 293, we construed Chapter 246, Session Laws 1913, p. 684 (68 O.S.1961, § 1901 et seq.) [Supp.1970] together with the amendment thereto, being Chapter 105, Session Laws 1915, p. 167, and specifically held that said statutory provisions levy a registration tax upon the privilege of recording the instruments therein specified, and the tax being a privilege tax and not a property tax would not be subject to Art. X, § 5, of the Oklahoma Constitution. Also see McGannon, Admx. v. State ex rel. Trapp et al., 33 Okl. 145, 124 P. 1063.

█ Finally plaintiffs say that by reason of the treatment, hereinabove described, that is accorded the two electric utilities, plaintiffs are denied the equal protection of the laws under the Fourteenth Amendment to the United States Constitution because 68 O.S.1961, § 1908 (1968 Supp.) is administered in a discriminatory manner. Plaintiffs do not allege in paragraph 13, or elsewhere, in their amended petition that the challenged action of defendant is intentional, systematic, deliberate and persistent. Neither do plaintiffs' allegations support any such inferences. While a general demurrer admits all facts well pleaded together with all inferences which may be reasonably drawn therefrom, the language of a pleading where doubtful will be construed against the pleader upon the ground that, as he selects the language he should make its meaning clear. Mohoma Oil Co. v. Ambassador Oil Corp., Okl., 474 P.2d 950 (1970). That such allegations are necessary to raise the issue of unconstitutional administration in matters of taxation has been held in many cases. In Mackay Teleg. & Cable Co. v. Little Rock, 250 U.S. 94, 39 S.Ct. 428, 63 L.Ed. 863, the City of Little Rock enacted an ordinance permitting the company to erect poles and string wires along certain city streets and along railroad rights of way within the city. A license tax of 50¢ per pole per annum was enacted. On the issue of unequal administration the court said: "Nor is there ground for holding that plaintiff in error is subjected to unreasonable discrimination, in contravention of the equal protection clause of the 14th Amendment. The case shows that its franchise ordinance imposes

the same and no greater tax than that which is applied by a general ordinance to other companies maintaining poles in the city. The offer of testimony to prove that the two other companies were not in fact required to pay the tax upon so many of their poles as stood upon railroad rights of way went no further than to show that the general ordinance had not been enforced against them in the same manner that it was proposed to enforce the franchise ordinance against plaintiff in error. *There was no offer to show an arbitrary and intentionally unfair discrimination in the administration of the ordinance* as in Yick Wo v. Hopkins, 118 U.S. 356, 374, 6 S.Ct. 1064, 30 L.Ed. 220, 227." (emphasis supplied)

In Sunday Lake Iron Co. v. Wakefield, 247 U.S. 350, 38 S.Ct. 495, 62 L.Ed. 1154, the court said "The record discloses facts which render it more than probable that plaintiff in error's mines were assessed for the year 1911 (but not before or afterwards) relatively higher than other lands within the county although the statute enjoined the same rule for all. But we are unable to conclude that the evidence suffices clearly to establish that the state board entertained or is chargeable with any purpose or design to discriminate." Earlier in its opinion the court, in emphasizing that intentional systematic undervaluation is the thing that contravenes the 14th Amendment said: "It is also clear that mere errors of judgment by officials will not support a claim of discrimination." In categorizing what must be alleged and proved to establish discrimination in tax administration under the 14th Amendment, American Jurisprudence, Taxation, § 170, pp. 226, 227, citing cases, states: "Before this result is reached, however, it must be shown that the action of the administrative officials was intentional, systematic, deliberate, persistent, habitual, fraudulent, and/or designed to violate fundamental constitutional principles, mere errors of judgment, or mistake being insufficient."

The allegations of the petition as amended do not meet this test.

Affirmed.

WILLIAMS, JACKSON, IRWIN, HODGES, LAVENDER, McINERNEY and BARNES, JJ., concur.

BERRY, C. J., dissents.