LOMOND VIEW NURSING HOMES, INC., and Alyce-Robb Nursing Home, Inc., Plaintiffs-Appellants,

v.

Joseph A. CALIFANO, Jr., Secretary, Department of Health, Education and Welfare, and State of Utah Department of Social Services, Defendants-Appellees.

Nos. 79–2162, 80–1612.

United States Court of Appeals, Tenth Circuit.

Argued Oct. 14, 1980.

Decided Jan. 29, 1981.

Gordon A. Madsen (Vernon B. Romney and Robert C. Cummings, Salt Lake City, Utah, with him on brief) of Romney, Madsen & Cummings, Salt Lake City, Utah, for plaintiffs-appellants.

Wallace Boyack, Asst. U. S. Atty., Salt Lake City, Utah (Ronald L. Rencher, U. S. Atty., Salt Lake City, Utah, with him on brief, Jeffrey P. Golland, Dept. of Health, Ed. and Welfare, Washington, D. C., of counsel), for defendant-appellee Joseph A. Califano, Jr., Secretary, Dept. of Health, Ed. and Welfare.

Bernard M. Tanner, Asst. Atty. Gen., State of Utah (Robert B. Hansen, Atty. Gen. and Mary M. Howarth, Sp. Asst. Atty. Gen., Salt Lake City, Utah, with him on brief), Salt Lake City, Utah, for appellee State of Utah Dept. of Social Services.

Before SETH, Chief Judge, and BREITENSTEIN and BARRETT, Circuit Judges.

SETH, Chief Judge.

The plaintiffs are the owners and operators of several nursing homes in Utah. The homes are considered intermediate care facilities (42 U.S.C. § 1396d(c)) and the care is provided under Title XIX of the Social Security Act as Medicaid under provider

agreements with the state. This action concerns the termination of the agreements with the several homes. The plaintiffs claim damages for what they assert was the wrongful termination of the agreements and Medicaid funding in 1977. The trial court granted summary judgment for defendants.

The basis for the claim is alleged as an arbitrary termination of the provider agreements; that no pre-termination hearing was afforded; that other operators were permitted to continue; and that defendants were estopped by their conduct.

The defendants are the Utah Department of Social Services and the Secretary of Health, Education and Welfare. The reason advanced by the defendants for termination of the agreements and funding was that the physical facilities of plaintiffs did not comply with the Life and Safety Code (42 C.F.R. §§ 442.321–442.323). Substantial structural changes were necessary to comply with the Code and plaintiffs, after a long series of inspections by the state and their responses thereto, decided to build new facilities.

The time for compliance was extended conditioned on plaintiffs being able to show that commitment for financing had been obtained, and that construction was started by a prescribed date. It was the obligation of the State of Utah to see that the facilities conformed to the Code.

The trial court after discovery was completed determined that the extension of the agreements and conditions was proper, but that the plaintiffs had not complied with the conditions. The plaintiffs do not challenge the regulations and do not assert that they were in complete compliance with the Code. The extent of noncompliance was not established fully in the record.

The homes are not recipients of benefits as individuals are, *see Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18, and *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287. The series of state inspections and surveys, the responses by plaintiffs thereto, and the resurveys are significant. These cannot be detailed but

these proceedings with the dialogue and the correspondence clearly and directly brought the problems to plaintiffs' attention and secured a reaction. The focus was narrow and clear with no chance for misunderstanding. This began with the effective date of the 1974 Code and continued for several years. The conclusions reached by plaintiffs were apparently that the facilities could not be brought into compliance for the dollars that would obtain new facilities with the other benefits therefrom. In any event, plaintiffs advised the state that new facilities would be built. This demonstrated the resolution of the basic fire danger issue under the Code, and was also a resolution advanced by plaintiffs as to the other physical facility issues. This extensive and direct consideration of the problems and the Code, with the conclusion, must be considered as adequate pre-termination notice, advice, chance for response, testing of the reasons advanced by the agency, and all other pre-termination focus on the real issues. Each party concerned thus knew what the exact problems and issues were, and knew the position of the others on each. Credibility was not a factor.

■ We considered the right of the owners of skilled care facilities to a pre-termination hearing at the end of a contractual period in *Geriatrics, Inc. v. Patricia Harris,* 640 F.2d 262 (10th Cir. 1981), and concluded that no pre-termination hearing was required. The *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287, decision was considered with *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18, and the opinions by the several circuit courts which had considered the issue.

The issue in this case is slightly different than in *Geriatrics* in that the termination here came after a period of extension or waiver to provide time to start a new building, but the conclusion must be the same. A waiver is a separate agreement containing conditions to be met within a stated time. The plaintiffs acquiesced in the waiver or extension and the conditions.

We must hold that plaintiffs were not entitled to a pre-termination hearing. The relationships were in substance no different than under the original agreements.

The record demonstrates that the conditions attached to the extension of the provider agreements were valid and there were no elements of estoppel present. The argument asserting lack of equal protection by reason of uneven enforcement is not persuasive. Only the conclusion is stated and this cannot be enough. *MacKay Telegraph Co. v. Little Rock*, 250 U.S. 94, 39 S.Ct. 428, 63 L.Ed. 863.

The trial court ordered a post-termination hearing pursuant to 42 C.F.R. § 431.151 before a state administrative agency or officer. The issues to be so considered have become somewhat narrowed, but we do not disagree with that portion of the trial court's order, but only as a statutory or regulatory provision provided in these circumstances. The state is solely responsible for administration of the Medicaid program and procedures.

AFFIRMED.